HARRY LEE AARON V. STATE.

No. 30,855. June 27, 1959.
Motion for Rehearing Overruled October 28, 1959.

DAVIDSON, Judge, dissented.

*Shannon L. Morris,* Baytown, for appellant.

*Dan Walton,* District Attorney, *Thomas D. White, Samuel H. Robertson, Jr., Lee P. Ward, Jr.,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is boxcar burglary; the punishment, 2 years.

M. L. Wismer testified that he owned the Stassi Distributing Company in Houston and was the distributor for Jax beer in the area; that immediately adjacent to his warehouse, and on his property, there was a spur or side-track off the railroad main line; that he received his beer from New Orleans by freight car two or three times a week; and that such boxcars were spotted at his warehouse at either nine o'clock in the morning or between nine and ten o'clock at night. He stated that on the night charged in the indictment he first learned of the presence of the boxcar in question on his siding when the police called him, and he saw the door of the boxcar next to his warehouse open and noted that five cases of beer were missing therefrom.

Charles White, who lived across the railway track from the

warehouse, heard a noise on the night in question, observed a two-toned Buick automobile parked near the warehouse and a man run from behind a hedge to the automobile, place something therein, and the automobile then drove away.

Officer McDowell of the Baytown police testified that at 9:50 P.M. on the night in question he had occasion to check the Stassi warehouse, saw a boxcar at the dock, and noticed nothing unusual about it; that at 10:30 he received a call, returned to the warehouse; and that "it was quite noticeable" that the door of the boxcar next to the warehouse had been opened.

Railway yard clerk Thurman testified that he inspected all incoming boxcars in the Baytown yard on the day in question and found all the seals intact.

Special Agent Anderson of the railroad testified that, while investigating the burglary, he found seals on the ground under the boxcar which, according to his records, had been affixed to the doors of the car in New Orleans.

Appellant's confession was introduced in evidence which recited that he, Berry and one Chesney were riding around in Chesney's Buick on the night in question, passed the Jax beer warehouse, and that Berry and Chesney discussed getting some beer and selling it. It recites that they turned around, came back, and all three of them went over to the boxcar; that he and Berry hid while Chesney opened the boxcar door and started throwing out cases of beer; that Berry and Chesney carried the beer and put it in the back of the Buick. It contains this further recitation. "Somebody told me to watch while they carried the beer over to the car." The confession concludes with the recitation that after they got home Chesney told the two of them that he knew where he could sell the beer and "he would give us the money," but that soon thereafter he heard that Chesney had been arrested.

Appellant did not testify nor offer any evidence in his own behalf, and we shall discuss the several questions advanced by counsel in brief and argument.

He first contends that the evidence is insufficient to show that he was a principal to the burglary. Though not without difficulty, we have concluded that appellant's confession is sufficient to show that he was present and acting together with his companions in the commission of the offense. Quesada v. State, 158

Texas Cr. Rep. 43, 253 S.W. 2d 48, and Mann v. State, 161 Texas Cr. Rep. 432, 277 S.W. 2d 718.

Appellant next contends that the facts did not support the averment in the indictment that the boxcar was in the possession of Wismer. In addition to what has been stated, it should be noted that in Wismer's testimony the following is found.

"Q. And that boxcar was under your care, custody and control? A. Yes, sir."

It is apparent from his testimony that it was the custom of the railroad to spot cars on his private siding at night. The case United Firemen's Insurance Company v. Thompson, 259 S.W. 2d 612, would seem to support our holding here that, where it was customary for the railroad company to spot cars on a private siding, delivery was effected by such spotting and that the indictment properly charged that the railroad car was in the care, control and management of Wismer.

Appellant's contention that the state failed to corroborate the confession cannot be sustained. It has been demonstrated from the above that aside from the confession the state showed that someone broke and entered the boxcar. Reliance is had upon Livingston v. State, 133 Texas Cr. Rep. 437, 112 S.W. 2d 190. The distinction is apparent. In Livingston, there was no proof outside of the confession of the accused that a burglarious entry had been effected. Here, the boxcar door was found open, and the testimony of McDowell, Anderson and Thurman establishes that it was closed a short time prior to the discovery of the loss.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment of the trial court is affirmed.

DAVIDSON, Judge (dissenting).

Because the evidence fails to authorize the conviction, I can not agree to the affirmance of this case.

The Stassi Distributing Company was the distributor of Jax beer and maintained a warehouse at 707 South Main Street in Baytown, Texas, and located along a siding of track of the Missouri Pacific Railroad.

During the early evening hours of June 23, 1958, the attention of White, who lived next door to the warehouse, was attracted by the slamming of a car door in the vicinity of the warehouse at which time he saw someone get in an automobile parked near the tracks and leave hurriedly.

The police were notified by Mr. White.

It was discovered that a boxcar on the railroad siding adjacent to the warehouse of the aforesaid distributing company had been broken into and that five cases of Jax beer had been taken therefrom.

Appellant was not identified as the guilty participant in that burglary.

To connect appellant with the burglary, the state relies solely and alone upon his written confession, which is as follows:

"My name is Harry Lee Aaron. I live at 2110 Rosille Drive, Baytown, Texas. I am married. I was working as a carpenter's helper in Lufkin, Texas.

"Robert Berry, Arley Chesney and I left the Roseland Park Swimming Pool about 9:00 p.m. on the 23rd of June, 1958. We were in Arley's Buick. We rode around for about forty-five minutes. We had started to the house and we passed by the Jax Beer Warehouse and Arley said something about the boxcar that was setting beside the warehouse. Arley said something about us stopping and getting some beer and going and selling it. We had already passed the place and no one said anything else until we were at the road to the house and Arley said something else and Berry said something to Arley and Arley turned the car around and he went back up to the warehouse and he stopped the car and we set there for a few minutes. We all three got out and we all three stood by the car for a few minutes and then we all went over to the boxcar. Berry and I went behind the boxcar to hide and Arley was going around the car trying to find a way to get in the car. Arley opened the door that was next to the warehouse. Arley said that the car had a seal. Arley started throwing the beer out of the car on the ground in the cases. Arley threw two cases out on the ground and he got out of the boxcar and picked them up and put them in the back seat of his car. Then he came back and threw three more cases out on the ground. Somebody told me to watch while they carried the beer over to the car. Arley picked up two cases

and Berry picked up one and they went over to the car and put the beer in the back seat. Berry said, 'I'm going.' I told him to wait on me that I was going with him. We started walking down the street and Arley got the old car started and he picked us up. Arley took Berry and *I* on to the house. The address is 612 Miriam Street. Before we got in the house, Arley called us to the car and he told us he knew where he could sell the beer and he said he would give us the money. After this I didn't hear any more about it until Arley's Dad told me Arley had been picked up.

"This is all I know about this incident. I can read and write the English Language and I have read the above statement and it is true and correct to the best of my knowledge. I have not been promised anything for making this statement."

"Signed: Harry Lee Aaron, Jr.

"Harry Lee Aaron.

"Witnesses:

"S/Sgt. H. H. Steele

"S/S H. F. Freeman, Jr."

It is impossible from that confession to identify the burglary of a railroad car belonging to the Missouri Pacific Railroad at the siding adjacent to the Stassi Distributing Company situated at 707 South Main Street in Baytown, Texas.

It will be noted that the confession nowhere fixes the locale of the incident therein related as having occurred in Harris County, Texas, where this prosecution was maintained and conducted.

The confession of appellant did not connect him with the burglary or show that he was guilty of burglarizing the boxcar in question.

It is apparent that the evidence fails to prove appellant's guilty connection with the offense charged.

In addition to the foregoing, the evidence is insufficient to sustain the conviction, because of the failure to show that M. L. Wismer was the owner of the railroad car—that is, that he

was in the actual care, control, and custody of the boxcar and of the personal property therein, as alleged in this indictment.

Wismer was the general manager of the Stassi Distributing Company. He knew nothing of the boxcar of beer being on the siding until he was notified of the burglary. There is an entire absence of any evidence on his part that he had ordered or was expecting a carload of beer or that he had received, or surrendered, a bill of lading therefor. There is an absence of any proof showing that he had any authority or control over the car of beer that was broken into.

The agent of the Missouri Pacific Railroad who investigated the burglary on the day following its alleged commission was asked the following question: " * * * at the time you went there you had the bill of lading on the contents of that boxcar?" His answer was, "Yes, sir."

The bill of lading was not offered in evidence. The fact that it was not placed in evidence tends to show that the Stassi Distributing Company had no connection therewith. If the bill of lading showed that the car of beer was consigned to or owned by that company it should have been introduced in evidence.

The boxcar was in the possession and ownership of the railroad and its agents. There is no evidence that the actual care, control, and custody of the car had passed to any other person.

There is an entire absence of any evidence that Wismer was the owner of the boxcar or the contents thereof, as alleged in the indictment.

For the reasons stated, I respectfully dissent.