R. C. S. a juvenile, Appellant,

v.

The STATE of Texas, Appellee.

No. 15769.

Court of Civil Appeals of Texas, San Antonio.

Feb. 16, 1977.

**942**

Michael W. Bahan, William W. Morris, San Antonio, for appellant.

Ted Butler, Crim. Dist. Atty., Alan E. Battaglia, Asst. Crim. Dist. Atty., San Antonio, for appellee.

CADENA, Justice.

Appellant seeks reversal of a judgment of the Juvenile Court of Bexar County declaring him to be a delinquent child and committing him to the custody of the Texas Youth Council. The adjudication of delinquency is based on jury findings that appellant committed the felony offenses of arson and burglary with intent to commit theft.

Appellant's first two points seek reversal of the judgment because there was no evidence, aliunde his extrajudicial admissions and confession, tending to prove the corpus delicti of the two offenses in question.

The requirement that the State prove the corpus delicti merely means that there must be proof that a crime has been committed by somebody. *Self v. State*, 513 S.W.2d 832 (Tex.Cr.App.1974). There are judicial statements indicating that proof that defendant committed the crime is essential to proof of the corpus delicti. *Bussey v. State*, 474 S.W.2d 708, 710 (Tex.Cr. App.1972). Proof of defendant's connection with the criminal conduct is, of course, necessary for conviction, but proof of the defendant's involvement is not essential to proof that a crime has been committed.

Appellant relies on the almost universally recognized rule that a defendant's extrajudicial admissions, standing alone, do not constitute sufficient proof of the corpus delicti. This rule merely means that there must be evidence, aliunde the admissions or confession, that a crime was, in fact, committed by someone. For the purpose of this opinion, we assume that such independent evidence need not be sufficient to prove the corpus delicti beyond a reasonable doubt, or even by a preponderance of the evidence, and that all that is required is that there be some evidence, other than the admission or confession, that a crime was committed by someone. *Self v. State, supra*, 513 S.W.2d at 837. *See*, generally, on the question of quantum of proof, Note 103 U. of Pa.L.Rev. 738 (1955). This rule, sometimes stated in terms of a requirement that the confession of the defendant be corroborated, does not apply to the issue of defendant's involvement in the crime. The identity of the defendant as the perpetrator of the crime can be established by his confession alone.

In order to establish the corpus delicti of the crime of arson it must be shown (1) that a fire occurred and (2) that the fire was designedly set by someone. *Bussey v. State, supra*. In the case before us, there is ample evidence, independent of appellant's admissions, that there was a fire. But, except for appellant's admissions, there is no evidence that the fire was designedly set or, as sometimes expressed, that the fire was of incendiary origin. No witness testified as to the cause of the fire, nor did any

witness offer even a tentative opinion as to the cause.

The State relies heavily on *Self v. State, supra,* a murder case in which the independent evidence established that two young girls disappeared and their corpses were found some months later in a body of water. The Court of Criminal Appeals said that the corpus delicti of the crime of murder consists of two elements. The first element "is that the body or the remains of the body of the deceased be found and identified." See § 12.02, Tex.Penal Code Ann. (1974). The second element "is that the death of the deceased was caused by the criminal act of another." 513 S.W.2d at 834–35. There was no problem concerning the first element, since the bodies of the two girls were found and identified independently of the defendant's confession, just as, in the case before us, there is abundant evidence of the first element of the crime of arson, i. e., the occurrence of a fire.

The problem in *Self* related to evidence of the second element of the corpus delicti of the crime of murder, that is, that the death was caused by the criminal conduct of someone, just as here the dispute is as to the second element of the corpus delicti of the crime of arson, that is, that the fire was caused by the criminal act of someone.

In *Self,* the Court of Criminal Appeals, addressing itself to the second element of the corpus delicti of murder, said, "The disappearance and death of two apparently healthy girls at the same time makes it more probable that their deaths were caused by criminal means than by suicide, accident, or natural means." 513 S.W.2d at 837. Thus, the Court of Criminal Appeals, without reference to the confession of the accused, was able to find evidence that the death was the result of someone's criminal act. If the term "more probable" was deliberately used, it can justifiably be concluded that the Court was of the opinion that the independent evidence established the existence of the second element of the corpus delicti by a preponderance of the evidence.

*Self* blazed no new trail. Whether we agree with the conclusion which the Court drew from evidence of the simultaneous disappearance and death of two apparently healthy persons is beside the point. If the inference is accepted as a valid one, *Self* makes no change in the traditional application of the rule applicable to corpus delicti.

■ The State here argues that the statement in appellant's confession to the effect that he designedly set the fire finds support in the independent evidence to the effect that the fire occurred. *Self* lends no support to this argument. In effect, the State insists the evidence of the occurrence of a fire is evidence that the fire was of incendiary origin. *Self* did not hold that evidence that an identifiable corpse is conveniently found lying around is evidence that the death resulted from foul play. To accept the State's argument requires that we compress two elements into one. It is nonsense to say that in order to establish the existence of fact C there must be evidence of the existence of fact A and evidence of the existence of fact B, and then to add that evidence of A is evidence of B. If evidence of A is necessarily evidence of B, then the correct statement of the rule is simply, "Evidence of the existence of C requires evidence of the existence of A." As applied to arson, the State's position changes the description of the corpus delicti from "a fire designedly set" to simply, "a fire." We have before us no evidence, independent of appellant's admissions, which "makes it more probable that" the fire "was caused by criminal means than by" accident or spontaneous combustion.

■ Nor is independent evidence that appellant was part of the crowd watching firemen attempt to extinguish the blaze evidence that the fire was designedly set. It is common knowledge that conflagrations attract spectators. The presence of a throng of curious persons at a fire tells nothing concerning the origin of the fire, although it may form some basis for conclusions concerning human nature.

In *Duncan v. State*, 109 Tex.Cr.R. 668, 7 S.W.2d 79, 80 (1928), the Court said:

> All the state has in this case independent of the alleged confession of appellant is that a fire occurred. The circumstances attending it are just as consistent with the absence of a crime as with the perpetration of one. Proof that a fire occurred of itself obviously does not prove that the crime of arson has been committed by someone. The record is without any evidence suggesting . . that such a fire was incendiary except what is contained in the alleged confession of appellant.

The evidence in this case is much weaker than the evidence in *Bussey v. State, supra*. There witnesses testified that defendant was in the vicinity of the burned building shortly before the fire started. One witness saw defendant in the area with a bottle, but he did not know what was in the bottle. One witness testified that shortly after defendant left the area she saw smoke coming from the building. The Court said:

> In the instant case, no witness testified to the cause of the fire, and indeed, no one even ventured an opinion as to the cause. The State made no attempt to negate the possibility that the fire resulted from defective electrical wiring, a defective water heater, spontaneous combustion, or any other one of the myriad of possible ways in which a house may burn without anyone being criminally responsible therefor. * * * [W]e have motive, declaration of intent, appellant placed in the vicinity of the house shortly before the fire, and the possibility that the fire could have started from another origin. . . . There is no testimony that anyone saw appellant set the house afire, and no testimony that the house was set afire.

474 S.W.2d at 710. *See also Hall v. State*, 155 Tex.Cr.R. 235, 233 S.W.2d 582 (1950).

The testimony in *Bussey* was characterized as "no testimony that the house was set afire." Evidence which is "no evidence" of the existence of a fact cannot be corroborative of the existence of such fact.

The corpus delicti of the crime of burglary is the breaking into a building. *Livingston v. State*, 133 Tex.Cr.R. 437, 112 S.W.2d 190, 191 (1937). In this case there is no evidence, independent of appellant's confession, that a breaking had occurred. The building in question is a public school building, and in the State's petition the principal of the school was named as owner of the building. The principal testified that he had not given permission to anyone to enter the building "to start a fire" or to "try to steal money." There is sufficient evidence of the fact that no person had permission to enter the building. But evidence to the effect that no one had permission to enter is not evidence that someone did enter.

In *Aaron v. State*, 168 Tex.Cr.R. 393, 328 S.W.2d 92 (1959), where it was held that there was evidence of a breaking, the evidence showed that the door to the structure had been closed shortly prior to the loss, and that after the loss the door was found open. Here there is no evidence showing that the doors to the school had been closed. There is no evidence that a door was found open after the fire was discovered or at any time. There is no evidence that a window was broken or that a window which had been closed had been raised.

The State argues that the fact "that the fire damage was confined to the interior of the building, . . . leads to the conclusion that the fire was started *from within the building* and therefore that an entry into the building had to have been made to start the fire." The argument might be a persuasive one if the evidence indicated that the fire damage was confined to the interior of the building. However, there is no such evidence. The State introduced into evidence 16 pictures which were identified as correctly depicting "part of the damage." The witness who identified the pictures testified that the photographs showed only the fire damage "in those particular areas." He stated that other parts of the building had been damaged, but that it had been impossible to take photographs of all the damage to the building.

Evidence showing that "part of the damage" occurred inside the building falls far short of even indicating that all of the fire damage "was confined to the interior of the building." Such testimony is no support for the conclusion that the fire was started "from within the building." Since there is no evidence that the fire started within the building, there is no basis for the conclusion that someone had to enter the building in order to start the fire. The State's contention also incorrectly assumes that there was evidence that the fire, wherever it originated, had been designedly "started" by someone.

We conclude that there is no evidence, aliunde appellant's admissions, tending to show the corpus delicti of either arson or burglary. However, there is no merit to appellant's contention that this conclusion requires that we here render judgment in favor of appellant. Appellant's admissions constitute "some evidence" of the constituent elements of the corpus delicti of each crime. The total absence of corroborative evidence merely means that the evidence, because of the absence of the required independent evidence, is insufficient to establish the corpus delicti. Such holding requires that the cause be remanded for a new trial.

Since a new trial will be required, it is necessary that we consider appellant's points concerning the admissibility of his written statement, it being foreseeable that the State will, at the second trial, again offer the confession in evidence.

The fire occurred during the evening of Friday, April 9, 1976. On Saturday, April 10, following several hours of interrogation by law enforcement officials at the police station, appellant signed a written confession. He was then placed in the juvenile detention center where he remained in confinement until about 10:00 A. M. Monday, April 12.

At some time between Saturday evening and Monday morning, it was decided that the statement which appellant had signed on Saturday was inadmissible in court proceedings because of the failure of the law enforcement officials to follow the requirements of Tex.Family Code Ann., § 51.-09(b)(1) (1976 Supp.). This decision was reached after a conference with a member of the district attorney's office, who recommended that a second statement be obtained.

The applicable statute makes the confession of a juvenile inadmissible unless the child has been given the *Miranda* warnings by a magistrate and advised by the magistrate that if he is 15 years of age or older, the juvenile court may waive its jurisdiction and certify him for trial as an adult. The statute further requires that the statement be signed by the child in the presence of the magistrate with no law enforcement officer or prosecuting attorney present only after the magistrate is convinced that the child understands the nature and contents of the statement and that he is signing it voluntarily.

At about 10:25 A.M. on Monday, April 12, appellant was taken from his place of confinement to the office of a magistrate, where he was given the required warnings in the manner prescribed by the statute. He was then taken to police headquarters and interrogated in the same office where he had signed the previous statement. This second interrogation and transcription of appellant's responses on a typewriter was accomplished in about 30 minutes, in contrast to the several hours required in order to obtain the first statement.

After the officer had completed typing the second statement, he again took appellant to the magistrate's office, where appellant signed it in the presence of the magistrate. The magistrate had no knowledge of appellant's prior statement.

After the second statement had been signed an officer destroyed the statement which appellant had signed two days previously because, as the officer testified, it was no longer needed.

Appellant unsuccessfully objected to the introduction in evidence of the second state-

ment, invoking the doctrine of the "fruit of the poisonous tree." Although the deliberate act of the law enforcement officials makes it impossible to compare the two statements, the testimony is to the effect that the two statements are substantially the same.

The doctrine on which appellant relies had its inception in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), where it was held that the prosecution could not use information obtained by illegal search to subpoena the very documents which were discovered as a result of such search. Apparently, the catch-phrase, "fruit of the poisonous tree," was first used by Mr. Justice Frankfurter in *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1940). The doctrine finds its most frequent application in cases involving unlawful searches and seizures.

The use of the doctrine has resulted in the development of the corollary doctrine of "purging" or "attenuation." Under this latter theory the critical question is whether, assuming the existence of primary illegal police conduct, the evidence offered has been discovered or made available by exploitation of the primary illegality or, instead, by means sufficiently distinguishable to allow a court to conclude that the offered evidence has been "purged" of the "taint" of the primary illegal police conduct. That is, the connection between the illegal police activity and the proffered testimony may become so "attenuated" as to dissipate the taint. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We have found only two decisions by the Supreme Court of the United States concerning the reception in evidence of an otherwise admissible confession which was obtained after defendant had made a prior inadmissible statement.

In *United States v. Bayer*, 331 U.S. 532, 540–41, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947), defendant, a member of the armed forces, made a statement to military authorities which was subsequently held to be inadmissible. Six months later he made a second statement. During the intervening period, the only restriction of his freedom was his inability to leave the military base without permission. In holding that the second statement was admissible, the Supreme Court said:

> Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed. . . . The second confession in this case was made six months after the first. The only restraint under which [defendant] labored was that he could not leave the base limits without permission. Certainly such a limitation on the freedom of one in the Army and subject to military discipline is not enough to make a confession voluntarily given after fair warning invalid as evidence against him.

In *Leyra v. Denno*, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954), defendant was convicted of murder following a trial at which several confessions given by him on the same day were received in evidence. On appeal, the state court held that the first statement given by defendant was inadmissible. On the second trial, the invalid confession was not used, but the state introduced several of defendant's subsequent statements. The Supreme Court overturned the conviction, pointing out that in view of the fact that all confessions were made during a period of five hours, following days and nights of intensive interrogation, the relation of the confessions was "so close that one must say the facts of one control the character of the other . . ." and that all confessions were simply part of

"one continuous process." 347 U.S. at 561, 74 S.Ct. at 719.

Our case does not fit comfortably within the framework of the facts before the Supreme Court in either of these two decisions. In *Bayer*, six months elapsed between the two statements. During this period, at least in the view of the Supreme Court, there was no significant restraint on defendant's freedom. In *Leyra*, all confessions were obtained during a five-hour period of apparently uninterrupted interrogation at the police station. In the case before us, there was a period of approximately 40 hours during which appellant was not subjected to interrogation, but during all of the intervening period he was incarcerated and did not enjoy the same freedom to communicate with others that the defendant in *Bayer* enjoyed.

In *United States v. Shea*, 436 F.2d 740 (9th Cir. 1970), defendant was arrested in Brazil by Brazil police and made a statement, not preceded by proper warnings, to Brazilian authorities. He was then brought to the United States where, after proper warning, he made a second statement to Federal law enforcement officers. A conviction based on the second statement was upheld, with the court emphasizing "the significant separation of time and place" between the two statements. 436 F.2d at 742.

The opinion does not disclose the time which elapsed between the two statements.

■ There is no objective test which produces an easy solution to problems like the one before us. Apparently, the question is whether the second statement, viewed in the light of the "totality of the circumstances," is free from the coercive influences which render the first inadmissible. In applying this amorphous standard, it must be borne in mind that the term "coercive influences" does not imply the presence of "coercion" in the normal sense of that word. The term is clearly broad enough to include the presence of circumstances, such as failure to give the required warning, which render the first statement inadmissible.

■ That portion of our Family Code dealing with juvenile offenders, including § 51.09(b)(1), clearly reflects a judicial determination that such offenders shall be afforded consideration and protection not normally extended to adult offenders. With specific reference to the problem of incriminating statements, the distinction between adults and children is clear. In the case of an adult, for example, the required warnings may be given by the person doing the interrogating. In the case of a child, a warning given by a police officer is insufficient. The warning must be given by a magistrate. The requirement that the confession must be signed in the presence of the magistrate, with no law enforcement officials present, applies only in the case of a juvenile offender. The legislative purpose is manifest.

■ The statute contains no provisions concerning the circumstances under which a second confession by a child, given after an inadmissible first confession has been made, will be purged of the taint of the previous illegal statement. But it is clear that the legislature contemplated that, in the case of a child, all of the warnings and admonitions required in order to make a statement admissible must be given by a magistrate, and that the magistrate will not permit the child to sign the statement until the magistrate is convinced that the statement is voluntary. Our courts have recognized that once a confession is given, the ability of the accused to resist the information-seeking process is substantially reduced. The impact of a warning given after the first incriminating statement has been made is much weaker than it would have been absent a prior confession, for one cannot be reasonably expected to persist in the denial of that which he has already admitted. Although the legislature has determined that the solemnity of a warning given by a judicial officer is more efficacious, in the case of a child, than one given

by a policeman, even a warning by a magistrate, and a determination by the magistrate that the confession is voluntary, is of questionable value when the magistrate's investigation is made in the absence of all knowledge of a prior illegal statement which places the child at a psychological disadvantage in the subsequent interrogation. Under such circumstances, the admonitions and counsel of the magistrate are unlikely to convert spiritless despair to alert vigilance in a child whose secret is already "out of the bag."

Under all of the circumstances of this case, we cannot accept the State's argument that this 14-year-old boy, who had been continuously incarcerated since the time he gave the illegal confession, was adequately warned of the fact that his first statement in no way affected his right to refuse to submit to further interrogation some 40 hours later, and to refuse to give a second statement, is supported by evidence establishing that fact beyond a reasonable doubt. The fact that a policeman, while escorting the child across the street from the detention center to the court room, informed the child that the first statement could not be used and that he had a right to remain silent, falls far short of satisfying the requirements of the statutory scheme and the confession was improperly received.

In view of our conclusion concerning the admissibility of the confession, we decline to pass on appellant's contention that § 51.-09 is unconstitutional since a determination of that question is not essential to our conclusion that the judgment of the trial court must be reversed.

The judgment of the trial court is reversed and the cause is remanded for a new trial.