IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-125-CR





KATHLEEN E. ECKHOLM,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 0912110, HONORABLE JON N. WISSER, JUDGE PRESIDING



 




 This appeal is taken from a conviction for arson. Tex. Penal Code Ann.
§ 28.02(a)(2)(A) (West Supp. 1993). After finding appellant guilty in a bench trial, the trial court
assessed punishment at four years' imprisonment. The imposition of the sentence was suspended
and appellant was placed on probation subject to certain conditions.

 Appellant advances three points of error. First, appellant challenges the legal
sufficiency of the evidence to sustain the conviction. Second, appellant contends that the trial
court erred in overruling the motion for new trial based on Brady violations by the State. See
Brady v. Maryland, 373 U.S. 82 (1963). Third, appellant urges that the trial court erred by not
setting aside its finding of guilt in face of the Brady violations by the prosecution. We will affirm
the judgment of conviction.

 On the night of October 6, 1989, the house at 609 Henderson Street in the City of
Austin burned. Firefighters from three different fire stations arrived on the scene about 9:15 p.m. 
Bill Cartwright, an arson investigator with the Austin Fire Department at the time, testified that
he arrived on the scene at approximately 9:25 p.m. and found the fire "in full progress" and the
house totally involved. The house was severely damaged by the fire and several firefighters were
injured.

 Paul Riojas (1) testified that on the evening of October 6, 1989, he was in the process
of moving out of his father's house at 605 Henderson Street which was south of 609 Henderson
Street. He stated that there was a vacant lot between 605 and 609 Henderson. Shortly after 8:30
p.m., Riojas heard glass break. Later, about 9:00 p.m., when Riojas was preparing to leave his
father's house, he observed a black Fiero automobile driving south on Henderson Street. It
stopped across the street from the Riojas house near a street light. A woman jumped out of the
car and ran from the car in a northerly direction. Riojas opened the door of his vehicle igniting
the dome light. The woman stopped, returned to the black Fiero and drove off rapidly. Riojas
identified the woman as appellant, who had formerly lived at 609 Henderson. He had seen the
black Fiero at that address on previous occasions. Riojas left his father's premises. He did not
see any fire or fire trucks. He testified, without objection, that his father later told him the house
at 609 Henderson caught fire about ten or fifteen minutes after he left.

 Cartwright testified that based on his experience and training the fire at 609
Henderson was incendiary in nature; that the fire had two points of origin; and that the perpetrator
or perpetrators had entered the vacant house with a container of gasoline, distributed the gasoline
first in the back area and at the west side entry area before igniting the resulting vapors with a
cigarette lighter or match. Cartwright testified that while at the scene he had observed a
Schwepps Diet Tonic Water bottle in a room adjacent to the two points of the fire's origin. He
did not examine the bottle or take it into his possession. Cartwright revealed that Captain Robert
Parker actually found the bottle and brought it to Cartwright's office the next morning. 
Cartwright added the bottle and the location where it was found to the sketch he was preparing. 
He believed the bottle had contained gasoline based on the odor of gasoline when the bottle was
brought to his office. Cartwright could not recall whether there was any visible liquid in the
bottle. The bottle had some "sooting" on it, but was not fire-damaged. No fingerprints were
found on the bottle.

 On November 3, 1989, almost a month after the fire, Cartwright and Parker went
to 406 Seminole where appellant lived. Cartwright observed a black Fiero sports car in the
driveway. Cartwright conversed with appellant, who acknowledged that she had formerly lived
at 609 Henderson, (2) and that she had learned of the fire from friends. Appellant told Cartwright
that she had had a number of problems with Alliance Bank, her former landlord. She claimed that
the bank did not address the insect control and repair problems and that she had moved out. 
Appellant informed the fire inspector that the bank owed her damages and she intended to file suit
in the small claims court.

 In response to Cartwright's inquiry, appellant replied that she had been home all
evening on October 6, 1989. To support her statements, appellant showed Cartwright her "Daily-Minder Log," where she recorded all of her appointments and activities. The page for October
6th was blank. Cartwright stated appellant did not give him the names of anyone who might
verify her story. Cartwright observed several Schwepps Diet Tonic Water bottles on the top of
appellant's refrigerator of the same type and size as the one recovered at the scene of the fire.

 Appellant denied any involvement in the fire. She testified that she moved from
609 Henderson because of problems with the landlord, including insect control. When the rent
was increased, appellant paid the "old amount" and informed the bank that it had failed to make
the necessary house repairs. After receiving advice from the Austin Tenants Council, appellant
paid all the rent due, and then issued demand letters to the bank requesting that it "fix things." 
When the bank failed to respond, appellant gave a thirty-day notice that she was terminating the
lease due to the bank's failure to make house repairs. Her deposit was never returned despite her
request to the bank.

 Appellant offered into evidence her "Daily-Minder Log" showing that on the
evening of October 6th she had talked on the telephone to five named individuals, one of whom
was deceased at the time of the December 1991 trial. Appellant denied that the page for October
6th was blank when it was shown to Cartwright. Four of the named individuals testified that they
had conversed with appellant on the telephone on the evening of October 6, 1989. Some of the
times given by the witnesses were overlapping, but appellant insisted she had talked on the
telephone until about 10:00 p.m.

 Appellant admitted that she owned a black Fiero automobile. She also
acknowledged that Schwepps Diet Tonic Water bottles may have been on top of her refrigerator
at her Seminole Street house. She explained that a gentleman friend brought such bottles to her
house at 609 Henderson as well as to her home on Seminole.

 Section 28.02(a)(2)(A) provides:



(a) A person commits an offense if he starts a fire or causes an explosion with
intent to destroy or damage


 (2) any building, habitation, or vehicle


 (A) knowing that it is within the limits of an incorporated city or
town.



Tex. Penal Code Ann. § 28.02(a)(2)(A) (West Supp. 1993).

 The instant indictment alleged in pertinent part that on or about the 6th day of
October 1989, appellant 



did then and there start a fire by putting a flammable liquid on a building and
igniting it with intent to damage and destroy a building owned by Alliance Bank,
located at 609 Henderson, knowing it was within the limits of an incorporated city,
to wit: Austin, Travis County, Texas.



 To establish the corpus delicti of arson, the State must show that the house was
designedly set on fire by someone. Adrian v. State, 587 S.W.2d 733, 735 (Tex. Crim. App.
1979). The offense of arson requires that the fire involved be of an incendiary origin. "This is
implicit in the requirement that the burning be intentional." Miller v. State, 566 S.W.2d 614, 618
(Tex. Crim. App. 1978).

 The corpus delicti of a crime is the body, the foundation of the crime, which
ordinarily includes two elements: the act and the criminal agency of the act. Black's Law
Dictionary 344 (6th Edition 1990). Corpus delicti, strictly speaking, means the actual commission
of a crime and someone criminally responsible therefor. Proof of the defendant's connection with
the crime is not part of the corpus delicti. Troncosa v. State, 670 S.W.2d 671, 680 (Tex.
App.--San Antonio 1984, no pet.). Proof of a defendant's connection with the crime, is, of course,
necessary for a conviction, but proof of a defendant's involvement is not essential to prove that
a crime (by someone) has been committed. R.C.S. v. State, 546 S.W.2d 939, 946 (Tex. Civ.
App.--San Antonio 1977, no pet.).

 Inspector Cartwright's testimony, if accepted by the trier of fact, established the
corpus delicti of the offense. Was the appellant sufficiently connected with the offense charged? 
When there is no testimony that anyone saw the defendant set the house afire or that the house was
set afire, evidence of the defendant's motive, declaration of intent, and presence in the vicinity
shortly before the fire is insufficient. Bussey v. State, 474 S.W.2d 708, 710 (Tex. Crim. App.
1972). When the evidence as to the incendiary origin of the fire is conflicting, the mere fact that
the defendant is seen leaving his house, shortly before the fire was discovered, is not sufficient
to show that the defendant set the fire. O'Keefe v. State, 587 S.W.2d 345, 349 (Tex. Crim. App.
1985). Thus, motive, opportunity and certain other factors are not alone sufficient to establish
that an accused set fire to a building. There must be evidence that the fire was of an incendiary
origin--that is, that someone intentionally burned the building. Massey v. State, 226 S.W.2d 856,
859 (Tex. Crim. App. 1950). In the instant case, there was evidence that the fire was of
incendiary origin. Therefore, we do not have a case in which motive, opportunity, etc., stand
alone. Consequently, motive, opportunity, etc., could be considered by the trier of fact to
determine that appellant set fire to the house at 609 Henderson Street. See Taylor v. State, 735
S.W.2d 930, 941 (Tex. App.--Dallas 1987), remanded on other grounds, No. 1184-87 (Tex. Crim.
App. Oct. 19, 1988) (unpublished), on remand, 763 S.W.2d 926 (Tex. App.--Dallas 1989), aff'd
sub nom Arnold v. State, 786 S.W.2d 295, 324 (Tex. Crim. App. 1990).

 There were no witnesses to the actual ignition of the fire and no direct evidence that
appellant intentionally set the fire. Of course, it is permissible to use circumstantial evidence to
establish the guilt of one accused of arson. Blankenship v. State, 319 S.W.2d 107, 109 (Tex.
Crim. App. 1958). 

 Riojas's testimony placed appellant on the street in front of 609 Henderson shortly
before the fire and after he heard glass break. When the dome light in Riojas's vehicle came on,
appellant immediately returned to her car and rapidly drove off. Thus, there was evidence of
presence in the vicinity and opportunity as well as flight, from which an inference of guilt may
be drawn. Earhart v. State, 823 S.W.2d 607, 616 (Tex. Crim. App. 1991). The intent required
can be inferred from the acts, words, and conduct of the accused in an arson case. Miller, 566
S.W.2d at 618.

 Cartwright's testimony showed that the fire was of an incendiary origin, and it "is
difficult to conceive of any intentionally set fire that would not have a motive behind it." Bogan
v. State, 837 S.W.2d 422, 430 (Tex. App.--Beaumont 1992, no pet.). Appellant had a dispute
with her former landlord about damages and the failure to return her deposit. Before and after
the fire, appellant indicated that she desired to sue Alliance Bank. The trial court could have
inferred from the evidence a motive for the intentionally set fire.

 The trial court also could have inferred from the testimony that appellant made
insertions in her Daily-Minder Log after Cartwright's visit to bolster her claim of alibi. The
Schwepps Diet Tonic bottles were readily accessible to appellant, but this evidence is less
incriminating than other evidence because of the similarity of the bottles to many other such
articles. See Kitchens v. State, 167 S.W.2d 762, 763 (Tex. Crim. App. 1943).

 In discussing the legal sufficiency of the evidence, another element of the offense
must be considered. The State was required to prove that appellant knew the house was located
in an incorporated city. Cartwright testified that the house at 609 Henderson was located within
the city limits of Austin, an incorporated city. There was evidence that appellant had lived at the
location described as north of Sixth Street near a car dealership, that she still lived in Austin, that
she had once been a real estate agent, and that she had called the Austin Tenants Council for
assistance in the dispute with Alliance Bank. We conclude the element of knowledge was
sufficiently proven. See Bella v. State, 792 S.W.2d 542, 544 (Tex. App.--El Paso 1990, no pet.);
Mouton v. State, 627 S.W.2d 765, 768 (Tex. App.--Houston [1st Dist.] 1981, no pet.).

 In a bench trial, the trial court is the trier of fact, judge of the credibility of the
witnesses and may accept or reject any part or all of the testimony given by any witness, whether
for the State or the defense. Wicker v. State, 667 S.W.2d 137, 141 (Tex. Crim. App.), cert.
denied, 469 U.S. 892 (1984); Alexander v. State, 823 S.W.2d 754, 756 (Tex. App.--Austin 1992,
no pet.).

 The standard of reviewing the legal sufficiency of the evidence is whether, viewing
the evidence in the light most favorable to the judgment, any rational trier of fact could have
found beyond a reasonable doubt the essential elements of the offense charged. Jackson v.
Virginia, 443 U.S. 307, 319 n.12 (1979); Valdez v. State, 776 S.W.2d 162, 165 (Tex. Crim.
App. 1989), cert. denied, 495 U.S. 963 (1990). The standard for review is the same in both
direct and circumstantial evidence cases. Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim.
App. 1990); Christian v. State, 686 S.W.2d 930, 934 (Tex. Crim. App. 1985). The outstanding
reasonable hypothesis (of innocence) construct as a method of appellate review for legal
evidentiary sufficiency in a circumstantial evidence case has been abolished. Geesa v. State, 820
S.W.2d 154, 161 (Tex. Crim. App. 1991). The instant cause was tried after Geesa. Therefore,
we measure the legal sufficiency of the evidence solely by reference to the Jackson standard. See
Krueger v. State, 843 S.W.2d 726, 728 (Tex. App.--Austin 1992, pet. ref'd).

 From the evidence in this cause, viewed in the light most favorable to the court's
judgment, we conclude that a rational trier of fact could find the essential elements of the offense
charged beyond a reasonable doubt. Our responsibility does not include substituting our view of
the evidence for that of the trier of fact. See Blankenship v. State, 780 S.W.2d 198, 207 (Tex.
Crim. App. 1989); Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The first
point of error is overruled.

 In her second point of error, appellant contends that the trial court erred in denying
her motion for new trial based on "Brady" violations by the State. In her new trial motion,
appellant alleged that she believed that Paul Riojas told a law enforcement officer a significantly
different story from the one that he related at trial. She urged in her motion that any significant
disparity between a witness's trial testimony and another statement made by the witness becomes
potentially exculpatory and is subject to a Brady motion granted by the trial court as in the instant
cause. At the hearing on the motion for new trial, appellant's counsel informed the trial court that
Paul Riojas's father would testify that Paul told him that he (Paul) had seen appellant's car coming
out of the driveway of 609 Henderson and then drive off down the street shortly before the fire. 
Counsel urged that while this version was inculpatory, it was nevertheless different from Paul
Riojas's trial testimony, and that Paul's father believed it to be the same story Paul had given to
Austin Fire Department investigators and to an insurance company investigator. Counsel
suggested that the conflicting statement was probably in the State's file, which he had not seen for
some time. The prosecutor denied that the State had such a statement. She informed the court
that the statement described would have benefitted the State, and would have been used at trial if
the State had such a statement, or it would have been made available to appellant. The prosecutor
argued that there was no Brady violation. The trial court found no Brady violation. Defense
counsel was then permitted to call the father on "a bill of review." (3)

 Guadalupe Riojas testified that he left his home at 605 Henderson Street about 8:00
p.m. on the evening in question. When he returned, the fire engines were in the street. The next
day, Paul came home and asked what had happened. When Paul was informed that the
neighboring house had burned the night before, Paul stated that "he saw a little car come out of
their driveway" and he thought it was "the girl that used to live there." Guadalupe Riojas testified
that Paul did not give him any additional details. He acknowledged that Paul did not tell him
about the car stopping under the street light or about anyone getting out of the car. Guadalupe
did not hear Paul relate the version given to him to anyone else, and no one who talked to him
(Guadalupe) indicated that they had heard "that story" from Paul. After the bill of exception was
perfected, the trial court did not change its ruling.

 Regardless of the good or bad faith of the prosecution, the suppression by the
prosecutor of evidence favorable to a defendant violates due process when such evidence is
material either to guilt or punishment. United States v. Bagley, 473 U.S. 667, 669 (1985); Brady,
373 U.S. at 87; Ex parte Adams, 768 S.W.2d 281, 288 (Tex. Crim. App. 1989). The rule can
be broken down into three distinct factors: 1) the suppression of evidence by the prosecution;
2) the favorable character of such evidence for the defendant; and 3) the materiality of the
evidence. Butler v. State, 736 S.W.2d 668, 670 (Tex. Crim. App. 1987); Cox v. State, 683
S.W.2d 431, 438 (Tex. Crim. App. 1984). The conviction must be reversed only if all three
factors exist. Id.; O'Rarden v. State, 777 S.W.2d 455, 458 (Tex. App.--Dallas 1989, pet. ref'd).

 The first factor exists if the prosecution actively suppresses evidence or negligently
or inadvertently fails to disclose it. Butler, 736 S.W.2d at 670. The "prosecution" includes all
members of the prosecution team--both investigative and prosecutorial. No distinction is drawn
between different agencies under the same government. Adams, 768 S.W.2d at 292. In the
instant cause, there was no showing that the statement or version of the facts made by Paul Riojas
to his father was ever made to members of the prosecution team. There was no indication that
the statement was in the possession of the State or that the State was even aware of such statement. 
The first factor did not exist as there was no suppression of evidence. 

 Even if the evidence was suppressed, was the evidence favorable to appellant? 
Impeachment evidence, as well as exculpatory evidence, falls within the definition of favorable
evidence because, if disclosed and used effectively, it may make the difference between conviction
and acquittal. Bagley, 473 U.S. at 676; Giglio v. United States, 405 U.S. 150, 154 (1972). 
Appellant contends that the highly inculpatory statement could have been used to impeach Paul
Riojas. However, it could have been used only to affect the credibility of Riojas as a witness, not
the issue of guilt or innocence. Given the nature of the statement and the fact it appeared more
of an extension of Paul Riojas's testimony rather than a conflicting statement useful for
impeachment, it would be difficult to say that the evidence was favorable to appellant.

 Evidence is material only if there is a reasonable probability that had it been
disclosed to the defense, the result of the proceeding would have been different. Bagley, 473 U.S.
at 682; Adams, 768 S.W.2d at 291. A "reasonable probability" is a probability sufficient to
undermine confidence in the outcome of the trial. Id. If such statement existed and if the
statement had been disclosed to appellant, we conclude that there is not a reasonable probability
that the result of the proceeding would have been different. None of the three factors existed.

 Appellant advances another claim of a Brady violation. She contends that Inspector
Cartwright misspoke when he testified that he personally saw the tonic water bottle at the scene
of the fire. This claim was not made part of the motion for a new trial itself. No testimony was
offered at the hearing to support such claim. Appellant's counsel informed the trial court that
after the trial Cartwright had recanted that part of his trial testimony about seeing the bottle at the
scene on the night of the fire, and that counsel had been so informed by the prosecutor. 
Appellant's counsel noted that in his trial brief (filed with the court) he had pointed out that
Cartwright had testified to "the opposite" at a pre-trial hearing. The State argued that appellant
was aware of Cartwright's earlier testimony and at trial did not seek to cross-examine him about
the matter in order to impeach his testimony. Where a defendant actually knew the facts which
were allegedly withheld, he or she cannot seek relief on the basis of the State's alleged failure to
disclose those facts. Ex parte Russell, 738 S.W.2d 644, 646 (Tex. Crim. App. 1986); Means v.
State, 429 S.W.2d 490, 496 (Tex. Crim. App. 1968); Navarro v. State, 810 S.W.2d 432, 436
(Tex. App.--San Antonio 1991, pet. ref'd); Givens v. State, 749 S.W.2d 954, 957 (Tex. App.--Fort
Worth 1988, pet. ref'd). Under the circumstances, the trial court did not err in overruling the
motion for new trial. Point of error two is overruled.

 In her third point of error, appellant urges that the trial court erred in failing to set
aside its finding of guilt in the face of the Brady violations by the State. This point was briefed
with the second point of error. It is not clear whether appellant is urging that the trial court
should have acted sua sponte or arguing again that the motion for new trial should have been
granted. We find no separate request for the trial court to set aside its earlier ruling nor has
appellant directed our attention to any such motion or request. Having found no Brady violations,
we conclude the point of error is without merit. It is overruled.

 The judgment of conviction is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Powers, Jones and Onion*

Affirmed

Filed: January 19, 1994

Do Not Publish























* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. The name was spelled "Riohaus" in parts of the record. There were two court reporters.
2. Cartwright testified that appellant gave him the dates of her occupancy of the house at 609
Henderson, but these dates were not elicited from him or from appellant when she testified. No
representative of the Alliance Bank testified.
3. Apparently, it was meant to be for the purpose of an informal bill of exception.