Rudy Benny TRONCOSA, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00391–CR.

Court of Appeals of Texas, San Antonio.

Feb. 15, 1984.

---

Shirley Ehrlich, Ehrlich & Garcia, San Antonio, for appellant.

Bill White, Dist. Atty., Richard Fox, Robert Arellano, Roy Carper, Asst. Criminal Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and CANTU and DIAL, JJ.

## OPINION

CANTU, Justice.

This is an appeal from a conviction for arson. Trial was to a jury but the punishment was assessed by the trial court at five years' confinement in the Texas Department of Corrections.

Appellant sets forth four grounds of error which basically may be categorized as a challenge to the sufficiency of the evidence supporting the conviction and a challenge to the trial court's holding his confession admissible.

The challenge to the court's finding of admissibility of appellant's confession rais-

es numerous contentions. Essentially, they are that the court's holding is not supported by proof of voluntariness because waiver of constitutional rights was never established and because the confession was shown to be the product of illegal detention.

The evidence introduced on the motion to suppress reflects that the interior of a vacant building located at 1023 South Alamo Street in the city of San Antonio was set afire on March 25, 1981, with the aid of a flammable liquid which was poured on the floor at the top of the stairs. No one saw appellant at the scene of the fire and his fingerprints were not found at the scene.

On March 26, 1981, Alfredo Castro, Jr., an investigator for the San Antonio Fire Department, Arson Bureau, and a certified peace officer, was at a location known as the "Friendly Spot," about a block and a half from the location of the fire. In the process of conducting his investigation, Castro came into contact with appellant there.

The owner of the Friendly Spot advised Castro that he had never seen appellant there before. Castro then approached appellant, identified himself and requested identification. Appellant presented Castro with identification that appeared to be partially burned. Castro questioned him about it, his place of residence and employment. Appellant then left the premises.

On April 8, following the receipt of information from an unidentified source that appellant was hanging around bars at the intersection of Flores and Martin Streets, Castro and his partner Robert Robinson proceeded to that location.

At about 11:30 p.m. appellant was seen by Robinson and Castro on the sidewalk at the intersection of Flores and Travis. Robinson called him over to their car, read him the *Miranda*[1] warning, placed him in the car and drove him to the arson office located in the San Antonio Police Department.

At the arson office, appellant was once again read the *Miranda* warning. Follow-ing about an hour and a half of interrogation, an incriminating statement was obtained from appellant.

The record is silent as to the procurement of an arrest warrant or the existence of probable cause to arrest appellant. Moreover, the State does not argue the existence of either but rather assumes the posture that an arrest did not occur until the obtaining of appellant's confession. The testimony discloses no more than the flagrant arrest of a suspect known to frequent bars at a particular intersection.

The findings of fact and conclusions of law prepared by the trial court as required by TEX.CODE CRIM.PROC. art. 38.22 (Vernon 1979) recite in pertinent part:

### FINDINGS OF FACT

The Court finds beyond a reasonable doubt that:

(1) The defendant was *arrested* as the result of an arson investigation on April 8, 1981.

(2) The defendant was not interrogated at the time of his *arrest*, but was given a warning as to his constitutional rights.

(3) The defendant was immediately transported to the arson investigation office where he was again advised of his rights.

* * * (Emphasis supplied)

The trial court then concludes that the confession obtained was voluntary and admissible as a matter of law.

Nowhere in the court's findings or conclusion is reference made to the legal basis for appellant's detention although the court recognizes that an arrest had indeed taken place prior to the warning and interrogation.

The State seeks to circumvent the requirement of a warrant and of probable cause by arguing that appellant was never arrested or detained without his consent until after the statement was given.

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The State argues that "appellant voluntarily accompanied the investigators to the police station, was never told that he could not leave, was not handcuffed, was not threatened, abused, or pressured, and was not placed under arrest until after giving his statement voluntarily."

The record does not verify the State's position.

At the Motion to Suppress hearing, officer Castro testified:
(Defense attorney)

Q: ... Okay. How did you come to take him into custody on April 8?
A: Okay, We had received information that Rudy was hanging around Flores and Travis at bars around there, so we were working nights. We were patrolling the area and we encountered Rudy on the sidewalk at Flores and Travis.

Q: What was he doing?
A: He was out on the corner there and my partner spotted him. He got out of the car and as I recall, he asked him to come by the car and he read him his rights there on the sidewalk. And then we put him in the car and took him to the office.

\*   \*   \*   \*   \*   \*

Q: Did he give you any trouble when you placed him under arrest? Did you have to subdue him?
A: No, sir. If I recall, I told him after the statement 'I'm going to take you to jail,' and he—

Q: No, that is not my question. When you first picked him up, did he resist arrest?
A: No sir, he did not.

Officer Robinson testified:
Q: ... When was the next time you saw Rudy Troncosa?
A: The next time was at the corner of—I'm trying to make sure I've got the intersection right—Flores, the same corner as the Navy Club, Ruben Carousel and another little nightclub on the northeast corner.

Q: Okay. And how did you come to talk to him, if you did?
A: We recognized him. We had been looking for him.

Q: Where were you looking for him? Why were you looking for him?
A: To talk to him again about his address, where he had been living, things like that that we could not find verification on, some stuff he told us earlier.

\*   \*   \*   \*   \*   \*

Q: Did you talk to him at all?
A: I am trying to think back. It has been a while. I think it amounted to I read him his rights, put him in the car, and he told me he left his jacket inside the bar, and I went back inside the bar and got his jacket.

Q: ... After you patted him down, would you have let him go if he had wanted to leave?

\*   \*   \*   \*   \*   \*

(CASTRO): I don't think so. I think we would have took him in.
Q: Okay. So in effect, he was under arrest from the time you patted him down, is that true?
A: No, sir, he was not.
Q: But you wouldn't have let him go?
A: No, sir.

\*   \*   \*   \*   \*   \*

It is apparent that the officer's concept of a voluntary accompanying is based upon an erroneous belief that a person is not under arrest until and unless handcuffs are applied. The following excerpt from Robinson's testimony illustrates.
(Defense attorney)

Q: You don't consider that when you have someone in custody, that you would not release him if he is not under arrest?
A: Not when he came voluntarily, no, sir.

Q: All right. Now your testimony is that he came voluntarily into the car, is that true?

A: Yes, sir.

Q: And all the time he was in the car, did you tell him he could be released if he wanted to?

A: No, sir, we didn't say anything like that.

Q: There were two police officers in the car with him, is that true?

A: Myself and officer Castro.

Q: And so in effect, he was in custody was he not?

A: I don't believe so, sir, I never arrested him.

Q: How do you arrest someone?

A: I handcuff them.

Q: I see. So in your mind, no one is under arrest until he is handcuffed?

A: That is my working knowledge, no, sir.

TEX.CODE CRIM.PROC.ANN. art. 14.-01 (Vernon 1977) provides:

(a) A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.

No evidence was adduced that at the time of appellant's detention, an offense was being committed and therefore, the State may not rely on Article 14.01.

Nor is there evidence to sustain the curtailment of appellant's movement upon a finding of probable cause from some other source. At best, the record contains a reference to receipt of information about appellant from an unidentified source.

■ Probable cause is necessary to arrest a person without a warrant and the standard is no less stringent than that needed to obtain a warrant. *In re Bates,* 555 S.W.2d 420, 435 (Tex.1977).

■ The test applicable in determining whether there is probable cause for arrest without a warrant is whether facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information was sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense. *Britton v. State,* 578 S.W.2d 685, 689 (Tex.Cr.App.1979) (on rehearing), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979).

■ An inarticulate hunch, suspicion or good faith of the arresting officer is insufficient to constitute probable cause for arrest, search or temporary detention. *Fatemi v. State,* 558 S.W.2d 463, 466 (Tex.Cr.App.1977).

■ When investigative detention is based on nothing more than inarticulate hunch, the fruits of the detention and subsequent search are inadmissible in evidence. *Tunnell v. State,* 554 S.W.2d 697, 698 (Tex.Cr.App.1977).

■ The burden is on the State to show that there was probable cause for a warrantless arrest and that burden remains the same whether the issue is raised pretrial or at the trial on the merits. *Roberts v. State,* 545 S.W.2d 157, 158 (Tex.Cr.App. 1977).[2]

The State has not pointed to anything in the record that might supply the required probable cause in the absence of a warrant. We find none.

We, therefore, search the record for evidence to substantiate the State's claim that an arrest did not occur until after the confession was obtained.

■ Whether the accused is or is not under arrest is to be determined from the sufficiency of the facts to reasonably create the impression in the accused's mind that he is under arrest. *Gilbreath v. State,* 412 S.W.2d 60, 61 (Tex.Cr.App.1967).

**2.** Appellant raised the issue of illegal detention pretrial and at the trial on the merits.

■ Whenever a police officer accosts an individual and restrains his freedom to walk away he has seized that person. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ It is not, however, the actual physical taking into custody that will constitute an "arrest." Rather an "arrest" is complete when a person's liberty of movement is restricted or restrained. *Hardinge v. State*, 500 S.W.2d 870, 873 (Tex.Cr.App. 1973).[3]

The State relies on *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) to persuade us that appellant was never illegally restrained. Much emphasis is placed upon the absence of handcuffs, the absence of a statement that appellant was not free to leave and an alleged voluntary accompanying to the arson office.

We do not consider *Mendenhall* controlling. Rather we think the instant case is controlled by the holdings in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) and *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).

There is little similarity between the instant case and *Mendenhall*. In *Mendenhall*, the government undertook to prove that the accused had voluntarily accompanied the arresting officers "in a spirit of apparent cooperation with their investigation." That burden was allegedly "discharged" because the record supported a trial court finding to that effect. In the instant case, consent to accompany was vehemently contested by appellant while in *Mendenhall* the accused elected to not contest the issue by not testifying at the suppression hearing. Additionally, the facts in

*Mendenhall* according to some of the members of the court [4] dispelled the occurrence of a "seizure" through physical force or show of authority while in the instant case the trial court was correctly convinced that an arrest had taken place rather than an accompanying in a spirit of cooperation.

The burden was upon the State to establish consent to accompany voluntarily. *United States v. Mendenhall, supra; Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ The State failed to discharge its burden. The record supports the trial court's finding of an arrest.

We fail to see any relevant distinction between the facts in the instant case and those in *Dunaway v. New York, supra*.

In *Dunaway*, detectives were instructed to pick up the accused and to bring him in. Police had received a possible lead implicating Dunaway in an attempted robbery; however, the information was apparently not sufficient to obtain a warrant.

Dunaway was taken into custody although he was not told he was under arrest. Nevertheless, the testimony of the arresting officers disclosed that Dunaway would have been physically restrained if he had attempted to leave. Dunaway was taken to the police station in a police car and placed in an interrogation room where he was questioned after receiving the *Miranda* warning. An inculpatory statement was then obtained.

After recognizing the type of detention Dunaway was subjected to and that Dunaway was not told he was free to go and would have been in any case restrained, the court stated:

> The application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion

---

3. The record reveals that appellant was not only restrained in his liberty of movement but was subjected to a search of the person which yielded a screw driver. Treated as a suspect, appellant was read the *Miranda* warnings and placed in the officers' car for transporting to the interrogation room of the arson office.

4. In *Mendenhall*, a majority of the court agreed that a "seizure" of the accused had occurred but some of the members would nevertheless justify the seizure.

of this magnitude is termed an "arrest" under State law.

\* \* \* \* \* \*

... [N]othing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed "arrests" or "investigatory detentions."

*Taylor v. Alabama, supra,* like *Dunaway,* is remarkably similar, in its facts to the instant case. In *Taylor,* police effectuated an investigatory arrest without probable cause, based on an uncorroborated informant's tip and involuntarily transported Taylor to the station for interrogation in the hope that something would turn up. A "voluntary" confession was obtained which satisfied the requirements of the Fifth Amendment but which did not remove the illegality of the initial arrest.

■ In summary, we rely upon *Brown v. Illinois, supra, Dunaway v. New York, supra* and *Taylor v. Alabama, supra* to hold that appellant's warrantless arrest was without probable cause and therefore illegal. *See also Green v. State,* 615 S.W.2d 700 (Tex.Cr.App.), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981).

Having determined that appellant's arrest was in violation of the Constitution and laws of this State as well as the Fourth and Fourteenth Amendments of the Constitution of the United States, we must now determine whether the connection between appellant's unauthorized arrest and his incriminatory statement obtained during his illegal detention was sufficiently attenuated to permit at trial, the use of that statement. *Dunaway v. New York, supra; Brown v. Illinois, supra; Taylor v. Alabama, supra.*

The trial court found that appellant was warned of his constitutional rights and concluded that appellant thereafter gave his incriminating statement voluntarily.

■ Although the voluntariness of the confession was forcefully contested by appellant under a theory that his mental re-

tardation prevented him from effectively and voluntarily waiving his constitutional rights sought to be safeguarded by the required *Miranda* warning, there is ample evidence in the record to support the trial court's rejection of appellant's theory and the conclusion that the confession was voluntary.

■ Because the trial court is the sole trier of fact at a hearing upon a motion to suppress, we are not at liberty to disturb a finding of voluntariness which finds support in the record. *McKittrick v. State,* 541 S.W.2d 177, 184 (Tex.Cr.App.1976); *Green v. State, supra* at 707.

Since we may not disturb the trial court's finding of voluntariness, we must now focus upon the Fourth Amendment analysis prescribed by *Brown v. Illinois, supra; Dunaway v. New York, supra* and *Taylor v. Alabama, supra,* in order to determine whether the State has met its burden of establishing that appellant's confession was not the product of his illegal arrest and detention.

■ A confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is "sufficiently an act of free will to purge the primary taint." Several factors should be considered in determining whether a confession has been purged of the taint of the illegal arrest. These are: the temporal proximity of the arrest and the confession, the presence of intervening circumstances and the purpose and flagrancy of the official misconduct. *Brown v. Illinois, supra; Dunaway v. New York, supra; Taylor v. Alabama, supra.*

From the time of appellant's arrest to the time appellant completed giving his confession, approximately an hour and a half elapsed.

The only intervening event occurred when appellant was taken to the scene of a burglary to which appellant confessed during interrogation. Upon return to the ar-

son office, uninterrupted interrogation continued culminating in the signed confession. It is clear from the record that interrogation was continuous from the time of the arrest until the signed confession was obtained. If anything, the intervening event militates against the State. *Cf. Green v. State, supra.* Clearly no intervening events broke the connection between appellant's arrest and confession.

■■■ The question whether a confession is the product of a free will must be answered on the facts of each case and no single fact is dispositive.

Although the *Miranda* warning serves as a procedural safeguard of the Fifth Amendment, it, in no way, informs a person of his Fourth Amendment rights, including his right to be released from unlawful custody following an arrest made without a warrant or without probable cause. *Brown v. Illinois, see* n. 6 at 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

■■■ We hold that the State has failed to meet its burden of showing that appellant's statement was admissible and the trial court erred by permitting its introduction before the jury. TEX.CODE CRIM. PROC. art. 38.23 (Vernon 1979).[5]

Although the case must be reversed we must consider appellant's sufficiency challenge in order to determine whether a remand is proper or whether acquittal is in order. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). *See Oaks v. State,* 642 S.W.2d 174, 179 (Tex.Cr.App.1982).

Appellant alleges that the evidence is insufficient to support a conviction for arson because the State has failed:

(1) to show that the offense occurred in the State of Texas,

(2) to corroborate the illegal confession,

(3) to show the damaged structure was a building as defined in section 28.01(2) of the Texas Penal Code, and

(4) to show that San Antonio is incorporated.

Although appellant has generally phrased his contention in terms of insufficiency to corroborate the confession, argument in support of the contention reflects that the gist of the challenge addresses a total failure of the evidence to sustain the conviction for a multitude of reasons.

Appellant's contention must thus be viewed as seeking reversal on grounds of evidentiary insufficiency as opposed to his challenge to the admissibility of the extrajudicial confession, which, as sustained, presents only trial error. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

In such a case, we are obliged to examine all the evidence, whether proper or improper. *See Porier v. State,* 662 S.W.2d 602 (1984) (not yet reported); *Collins v. State,* 602 S.W.2d 537, 539 (Tex.Cr.App.1980); *Swabado v. State,* 597 S.W.2d 361, 364 (Tex.Cr.App.1980).

■■■ To sustain a conviction resting upon an extra-judicial confession there must be corroborative evidence that a crime has been committed. *Smith v. State,* 363 S.W.2d 277, 279 (Tex.Cr.App. 1963).

■■■ It is universally recognized that an extra-judicial confession alone is not sufficient to establish the corpus delicti. *Adrian v. State,* 587 S.W.2d 733, 734 (Tex.Cr. App.1979); *Duncan v. State,* 109 Tex.Cr.R. 668, 7 S.W.2d 79 (1928). But proof of the corpus delicti need not be made independent of an extra-judicial confession. If there is some evidence corroborating the confession, the confession may be used to aid in the establishment of the corpus delicti. *Self v. State,* 513 S.W.2d 832, 835 (Tex.Cr.App.1974).

---

**5.** "No evidence obtained ... in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

If the corpus delicti is not established by evidence independent of the extra-judicial confession, the extra-judicial confession cannot be considered in determining the sufficiency of the evidence to support a conviction. H.C. UNDERHILL, CRIMINAL EVIDENCE, § 282 (4th ed. 1935); *Brown v. State*, 576 S.W.2d 36, 42–43 (Tex.Cr.App.1979) (on rehearing).

To establish the corpus delicti in arson cases it is necessary to show that a fire occurred and that the fire was designedly set by someone. *Adrian v. State, supra* at 735; *Burris v. State*, 154 Tex. Cr.R. 399, 227 S.W.2d 538, 539 (1950); *Robinson v. State*, 148 Tex.Cr.R. 439, 188 S.W.2d 182, 183 (1945).

Confusion sometimes arises from judicial pronouncements that the corpus delicti of arson additionally requires proof that the accused set the fire or was criminally connected therewith. *Compare Bussey v. State*, 474 S.W.2d 708, 710 (Tex.Cr.App. 1972); *Zepeda v. State*, 139 Tex.Cr.R. 258, 139 S.W.2d 820 (1940) (Corpus delicti in arson cases established by showing (a) building designedly set on fire; and (b) accused committed offense or criminally connected therewith) with *Barry v. State*, 166 Tex.Cr.R. 372, 314 S.W.2d 90, 91 (1958) (Corpus delicti established in arson cases by showing fire of incendiary origin).

To convict one of crime, proof must be made that the offense was committed and also that the accused was the perpetrator or one of the perpetrators of the offense. Corpus delicti strictly speaking means actual commission of a crime and someone criminally responsible therefor and proof of the defendant's connection with such crime is not part of the corpus delicti. H.C. UNDERHILL, CRIMINAL EVIDENCE, *supra* at § 35; *see also R.C.S. v. State*, 546 S.W.2d 939, 942 (Tex. Civ.App.—San Antonio 1977, no writ); *Self v. State, supra* at 834–35.

Evidence which establishes no more than motive and opportunity will not suffice to prove the corpus delicti. *Bussey v. State, supra* at 710; *Massey v. State*, 154 Tex.Cr.R. 263, 226 S.W.2d 856, 859 (1950). Nor will evidence which establishes only motive and intent or threats. *Hall v. State*, 155 Tex.Cr.R. 235, 233 S.W.2d 582, 583 (1950).

In the instant case, we find that the corpus delicti has been established by evidence independent of the extra-judicial confession, that is, it was shown that a fire occurred and that the fire was designedly set by someone. We are, therefore, not presented with a situation like the one in *Brown v. State, supra*, wherein an admissible confession was not corroborated by proof of the corpus delicti. In such a case, the infirmity was one of evidentiary insufficiency as opposed to one of trial error and the remedy was the entry of an order of acquittal. Had the instant case failed in the proof of the corpus delicti, the problem would be one of evidentiary insufficiency as well as one of trial error. There is evidence to corroborate the extra judicial confession although the confession itself was erroneously admitted.

A review of the State's evidence produces adequate proof that the fire was of incendiary origin, that the object was a building as contemplated by the statute and that the fire occurred in the City of San Antonio, an incorporated city. There is, however, not one iota of proof, circumstantial or direct, that appellant set fire to the building or was criminally connected with it except as appears in the ill-fated confession.

We recognize the frailty of the State's case when the confession is eliminated, nevertheless, we are compelled to enter the disposition dictated by the holdings of our Court of Criminal Appeals when only a question of trial error is involved. *See Adams v. State*, 639 S.W.2d 942, 943 (Tex. Cr.App.1982); *Fearance v. State*, 620 S.W.2d 577, 585 (Tex.Cr.App.) (on rehearing), *cert. denied*, 454 U.S. 899, 102 S.Ct. 400, 70 L.Ed.2d 215 (1981); *Collins v. State*, 602 S.W.2d 537, 540 (Tex.Cr.App. 1980) (on rehearing); *Ex parte Duran*, 581 S.W.2d 683, 686 (Tex.Cr.App.1979).

Appellant's sufficiency challenge is overruled. Because the trial court erred in admitting into evidence appellant's extrajudicial confession the judgment is reversed and the cause is remanded.