Billy Wayne MORGAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–89–203–CR.

Court of Appeals of Texas,
Waco.

July 25, 1991.

Walter M. Reaves, West, for appellant.

John W. Segrest, Crim. Dist. Atty., Gina Gay Parker and Tanya S. Dohoney, Asst. Dist. Attys., Paul E. Gartner and Linda M. Gassaway, Sp. Prosecutors, Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Appellant Billy Wayne Morgan was indicted by a McLennan County Grand Jury for Murder as a habitual criminal. He was tried before a jury, found guilty, and sentenced to life in prison. Appellant complains that improper argument was used by the prosecutor while closing, illegally obtained evidence was admitted at trial, evidence of extraneous offenses was admitted at trial and the indictment upon which he was prosecuted was void. We will affirm.

■ We will first consider whether the indictment was void because he was not accorded an examining trial. Appellant was indicted on April 6, 1989. The record reveals no request for an examining trial; nor was a motion to quash the indictment urged on this basis. With no request in the record concerning an examining trial, Appellant has not preserved error.

■ Further, the return of a true bill of indictment by the grand jury satisfies the principal purpose and justification for an examining trial—that there is probable cause to believe the accused committed the crime charged. *See Whittington v. State,* 781 S.W.2d 338, 341 (Tex.App.—Houston [14th Dist.] 1989, pet ref'd). Appellant's point is overruled.

■ Next, Appellant complains that the prosecutor commented on his failing to testify when the prosecutor said:

[PROSECUTOR]:

. . . .

I call your attention to page Five of what I have marked as Page Five of the Charge. *That's where the defendant has elected not to testify.* And we talked a lot about that during jury selection. You must not take into consideration that *he did not testify* in this case.

And I ask you that you follow the Court's Charge in that regard. It is our position that you don't even have to think about *him not testifying.* The evidence against him is simply overwhelming.

[APPELLANT'S ATTORNEY]: Your Honor, we will object—

[PROSECUTOR]: We didn't—

[APPELLANT'S ATTORNEY]:—to the comment on the failure to testify.

THE COURT: Overruled.

[PROSECUTOR]: We talk—

THE COURT: Let me say this: I instruct you that you will follow the instruction of the Court as given to you in the Court's Charge, and specifically in reference to [Appellant's] failure to testify.

The right against self-incrimination is afforded to all defendants in Texas by the state and federal constitutions and article 38.08 of the Code of Criminal Procedure.[1] *Jones v. State,* 693 S.W.2d 406, 407 (Tex. Crim.App.1985). The prohibition against comment on a defendant's right against self-incrimination is mandatory and is rarely cured by instruction. *Id.* The test is whether "the offending language, when viewed from the jury's standpoint, *must be* manifestly intended or be of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify." *Montoya v. State,* 744 S.W.2d 15, 35 (Tex.Crim.App. 1987) (on rehearing). However, it is not enough that the comment might be construed as an implied or indirect allusion to the defendant's failure to testify. *Id.* When applying the above standard, "the facts and circumstances of each case must be analyzed to determine whether the language used was of such character." *Id.*

The State's brief urges that the prosecutor's comment was made while he was giving a paragraph by paragraph summary of the charge and, therefore, was permissible pursuant to *Bouchillon. See Bouchillon v. State,* 540 S.W.2d 319, 322 (Tex.Crim.

---

1. Tex.Crim.Proc.Code Ann. art 38.08 (Vernon 1979)—Defendant may testify

Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.

App.1976). In *Bouchillon* the prosecutor's comments were as follows:

> [PROSECUTOR]: Now the law also instructs that the failure of the defendants to testify should not be taken as a circumstance against him and, of course, in this case they did not testify and you should follow this court's instruction and you should not consider that as any evidence ...

*Id.* at 321. Bouchillon's defense counsel then objected that the jury argument was improper and the court overruled his objection. *Id.*

■ The case at bar is similar; however, here the prosecutor made three direct comments on Appellant not testifying. This conduct is more than just a paragraph by paragraph summary. Using the test set out above we must examine the comments to determine whether they were manifestly intended to be of such a character that the jury would necessarily and naturally have taken them as comment on the accused's failure to testify. The first mention of Appellant not testifying does not fail the test, but to comment two more times in violation of a constitutional right should not be tolerated. The continued references to Appellant not testifying had a cumulative effect and were error. This is a very fine line but *Bouchillon* does not allow the constitutional rights of defendants to be violated under the guise of discussing the charge. The prosecutor's comments were improper and it was error for the trial court to overrule Appellant's objection to such comments.

■ The State also raises the issue of whether Appellant preserved the error for appellate review since he did not object when the prosecutor first mentioned Appellant not testifying. An objection must be timely and made at the first opportunity. *See* TEX.R.APP.P. 52(a). The comments did not become blatantly objectionable until the second or third time the prosecutor made a comment on Appellant not testifying; therefore, Appellant did preserve the error by making a timely objection. *See id.*

However, when analyzed under Rule 81(b)(2) of the Texas Rules of Appellate Procedure, we find beyond a reasonable doubt that the error did not contribute to the conviction or to the punishment. *See* TEX.R.APP.P. 81(b)(2). We overrule Appellant's point since the error of the trial court was harmless.

Appellant argues that the court erred in admitting evidence obtained by an illegal entry into his apartment. The entry occurred when Officer Kuykendall entered Appellant's apartment to arrest Angela McClendon who was going through and removing items from dresser drawers in the back bedroom of the apartment.

■ The first issue we must address is whether Appellant has "standing." The State has for the first time raised the issue on appeal and is allowed to do so under *Wilson v. State. See Wilson v. State,* 692 S.W.2d 661, 669 (Tex.Crim.App.1984) (on rehearing). *Wilson* also indicates standing is not the issue, but that the issue is whether Appellant has carried his burden of proving he had a legitimate expectation of privacy in the premises searched. *Id.* at 667. He must do so in order to prevail on his Fourth Amendment claim. *Id.* at 669.

■ Here, there is evidence that Appellant used the apartment searched as his private residence in which he kept his belongings and personal effects. We cannot say, based upon the above evidence, that he does not have a legitimate expectation of privacy in the premises. *See Cruz v. State,* 764 S.W.2d 302, 304 (Tex.App.— Houston [1st Dist.] 1988, no pet.)

■ We now consider the entry of Officer Kuykendall into the apartment to make a warrantless arrest of Angela McClendon. In order for a warrantless arrest to be justified, the State has the burden to prove the existence of probable cause at the time the arrest was made and the existence of circumstances which made the procuring of a warrant impracticable. *Smith v. State,* 739 S.W.2d 848, 852 (Tex. Crim.App.1987). Where an officer lacks probable cause to arrest, the challenged arrest will not be upheld merely because the exigencies of the situation precluded the officer from obtaining an arrest war-

rant. *Id.* "Probable cause for an arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent person in believing that a particular person has committed or is committing a crime." *Id.* Probable cause is necessary to arrest a person without a warrant and the standard is no less stringent than that needed to obtain a warrant. *Troncosa v. State,* 670 S.W.2d 671, 676 (Tex.App.—San Antonio 1984, no pet.). Additionally, the totality-of-the-circumstances approach is equally applicable to warrantless and warrant seizures of persons and property. *Eisenhauer v. State,* 754 S.W.2d 159, 164 (Tex. Crim.App.1988). It should be noted that an inarticulable hunch or suspicion that the accused is committing a crime is not sufficient. *Livingston v. State,* 739 S.W.2d 311, 326 (Tex.Crim.App.1987).

Here, the arresting officer knew only that the victim was dead, that the victim when last seen left with the Appellant and another male, and that the victim's body was found in a blanket that the victim's brother identified as the one he had seen at Appellant's apartment two to three weeks earlier. Further, he knew that the victim, Appellant, and Angela McClendon were suspected of being involved in a "check-kiting" scheme. Immediately prior to the arrest, the officer saw a black female unlock and enter Appellant's apartment, although he did not know that she was Angela McClendon until after the arrest. He also observed Appellant enter his own apartment and then exit carrying a television. He watched as Appellant walked to a gate, looked around, and then returned to his apartment. After he set the television down in front of his door, Appellant then proceeded to the rear of the building where a rental truck was located.

■ After a careful examination of Chapter 14 of the Code of Criminal Procedure concerning warrantless arrests, we believe the State has failed to carry its burden of proving McClendon's warrantless arrest fell within one of the statutory exceptions. *See* TEX.CODE CRIM.PROC.ANN. art. 14.01 (Vernon 1977). Appellant's home was not a suspicious place, a conclusion which is reinforced by the fact that the police did not go to Appellant's apartment until two days after learning its location. *See id.* at art. 14.03(a)(1) (Vernon Supp. 1991). There was no surveillance of the apartment except for the brief period that Officer Kuykendall observed Angela McClendon immediately prior to entering the apartment and arresting her. There was no indication of further violence. *See id* at art. 14.03(a)(2). Nor was there evidence of theft. *See id.* at art. 18.16. Although under article 14.04 of the Code of Criminal Procedure, Officer Kuykendall had proof that a felony had been committed, he had no proof that Angela McClendon (nor for that matter Appellant) was the offender. Because we find there was no probable cause to arrest Angela McClendon, we do not reach the issue of whether it was impractical for the officer to obtain a search warrant. *See Smith,* 739 S.W.2d at 852.

■ Under these circumstances, Officer Kuykendall had no authority to enter Appellant's apartment and arrest Angela McClendon. When an officer unlawfully intrudes into a constitutionally protected area and thereafter discovers facts to establish probable cause, such as the bloodstained sofa in this case, the evidence is illegally obtained and becomes "fruit of the poisonous tree." *See Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Wong Sun v. U.S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); and *Armstrong v. State,* 550 S.W.2d 25, 31 (Tex. Crim.App.1977) (on rehearing).

■ Officer Kuykendall had *no probable cause* to arrest Angela McClendon for the death of Roderick Freeman and *no statutory authority* to arrest her without a warrant. Since Appellant's home was a constitutionally protected area in which he had a reasonable expectation of privacy, and since Officer Kuykendall entered without consent, without a warrant, and without any lawful authority whatsoever, that which he observed while illegally in Appel-

lant's apartment, and his testimony concerning same, should have been suppressed. *See Payton,* 100 S.Ct. at 1378; *Wong Sun,* 83 S.Ct. at 413; and *Hill v. State,* 692 S.W.2d 716, 722 (Tex.Crim.App. 1985).

However, because the "tainted" evidence would have been discovered later when Appellant's apartment was searched pursuant to a facially valid search warrant, the error is harmless. The inventory from the later search revealed that the officers seized a couch pillow containing blood stains, a glass table cover with blood splatters, and a bullet fragment lodged in the couch. Since the "tainted" evidence was ultimately discovered using proper methods, the "taint" on the evidence discovered by Officer Kuykendall in his illegal entry into the apartment becomes harmless under the "ultimate or inevitable discovery" exception to the exclusionary rule. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 2509–10, 81 L.Ed.2d 377 (1984).

Further, Appellant urges that the photograph of the bloodstained couch and testimony of Officer Kuykendall about the couch bolstered the testimony of Angela McClendon and Ronnie King that the shooting took place as they described. In addition to the evidence "ultimately discovered" pursuant to the search warrant of Appellant's apartment, other physical evidence, such as the green blanket in which the victim's charred body was found which had last been seen about two weeks prior to the killing in Appellant's apartment and the evidence seized from the search of Appellant's car (two gun boxes, gun clips, shell casings, bullets and a gasoline can), corroborated the testimony of McClendon and King. After reviewing all the evidence, we determine beyond a reasonable doubt that the failure to suppress the evidence obtained from the Fourth Amendment violation, though flagrant and not to be encouraged, made no contribution in Appellant's conviction or punishment. The point is overruled.

Next, Appellant complains the court erred in failing to suppress evidence obtained as a result of search warrants for

Appellant's apartment and car because the warrants were too general. Both warrants were evidentiary search warrants authorized under article 18.02, Texas Code of Criminal Procedure. Both search warrants quoted the statutory language of article 18.02(10), describing the property to be seized as "property or items, except the personal writings of the accused, constituting evidence of the offense of murder or constituting evidence tending to show that a particular person committed the offense of murder ..." Appellant relies on article 18.01, Texas Code of Criminal Procedure, for the premise that the property to be seized must be "specifically described." He further contends that "general, exploratory rummaging in a person's belongings" is prohibited. *See Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); and *Gonzales v. State,* 577 S.W.2d 226 (Tex.Crim.App.1979). Here, the officers conducted good faith searches of Appellant's apartment and car and discovered several incriminating items, including gun boxes, gun clips, shell casings, and bullets. Obviously, there was a reasonable basis for the officers drawing a connection or "nexus" between these items and the murder being investigated. In *Bower v. State,* 769 S.W.2d 887, 906 (Tex.Crim.App.1989), cert. denied, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 the defendant complained about the seizure of a number of items not specifically listed in a search warrant issued pursuant to articles 18.01 and 18.02. The court held:

> An officer may seize evidence of a crime even though such property is not particularly described in the search warrant when the objects discovered and seized are *reasonably related to the offense in question,* when the officer at the time of the seizure has a reasonable basis for drawing a connection between the observed objects and the crime which furnished the basis for the search warrant, and the discovery of such property is made in the course of a good faith search conducted within the perimeters of the search warrant.

*Id.* Even though the gun boxes, gun clips, shell casings, and bullets were not specifically described in the search warrants, there was a nexus between this evidence and the murder being investigated and, therefore, the seizure of this evidence was not in violation of Appellant's constitutional rights. The points are overruled.

In his final point, Appellant contends the court erred in failing to grant a mistrial after the State introduced evidence of extraneous offenses involving a firearm. The evidence indicates that on the night of the killing Appellant had displayed the pistol that he ultimately used to shoot the victim in the chest and face and another weapon described as a "black gun." Angela McClendon and Ronnie King testified that Appellant purchased the weapons in Athens sometime prior to the killing. Further, the evidence never indicated that Appellant carried the weapons illegally. During the State's questioning of Ronnie King, Appellant complains of the following testimony concerning the "guns":

Q. Ronnie, on the night of March the 4th when ya'll went out to those two clubs, did this defendant carry either one of these guns with him when ya'll left that apartment?

A. Yes.

[DEFENSE COUNSEL]: Objection, Your Honor. Extraneous offense.

THE COURT: Sustained.

Defense counsel then requested and the Court gave an instruction to the jury to disregard the above testimony for any purpose. Defense counsel's motion for mistrial was overruled, after which there was a bench conference where the State's counsel urged that the testimony concerning the guns was admissible as part of the "context of the offense that [night]" and that it went to show the "state of mind" of Appellant just prior to the killing. The court ultimately ruled the testimony was admissible, apparently adopted the State's argument, though no reason was given by the court. After receiving a favorable ruling from the court, the State abandoned its effort to elicit further testimony concerning Appellant's display of the guns prior to

the killing. The recent case, *Montgomery v. State,* 810 S.W.2d 372, 376, 377 (Tex. Crim.App.1991), interpreting Texas Rules of Criminal Evidence 403 and 404(b), makes a significant change in the presumption that an extraneous offense is inadmissible because its prejudicial effect outweighs its probative value. Interpreting Rule 403, the court stated that:

Rule 403 has "shifted the focus somewhat from the test enunciated in *Williams,* supra, and its progeny. The approach under Rule 403 is to *admit relevant evidence* unless the probative value of that relevant evidence is *substantially* outweighed by the danger of unfair prejudice to a defendant."

*Crank v. State,* 761 S.W.2d 328 at 342, n. 5 (Tex.Crim.App.1988); and *Williams v. State,* 662 S.W.2d 344 (Tex.Crim.App.1983) (emphasis in original).

Once the court rules that the evidence has relevance, further objection is now required under Rule 403 to raise unfair prejudice. *Id.* at 376. Here, no further objection was raised by Appellant concerning unfair prejudice of the "guns" testimony, and any error concerning the prejudicial effect of the testimony is waived. This point is overruled.

The judgment is affirmed.

VANCE, Justice, concurring.

Although I agree with the result, I cannot agree with the majority's reliance on the "inevitable discovery" exception to the exclusionary rule in the harmless-error analysis. The rule was adopted in *Nix v. Williams,* where on retrial the state was faced with the inability to introduce evidence of the body of the young victim, its condition, the autopsy report, and all related evidence because of an interrogation error which led to the body's discovery. To avoid the exclusion of that vital evidence, the state proved that a search team of 200 volunteers had been systematically searching an area covering two counties in Iowa and were only two and one-half miles from the county in which the body was found when the search was called off due to William's disclosure of its location. *Nix v.*

*Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Each of the searchers was instructed to check all roads, abandoned farm buildings, ditches, culverts, and any other place in which the body of a small child could be hidden. The trial court found that the state had proved by a preponderance of the evidence that "if the search had not been suspended and Williams had not led the police to the victim, her body would have been discovered within a short time, in essentially the same condition as it was actually found." Thus, the Supreme Court held that the state had gained no advantage at trial and the defendant had suffered no prejudice. *Id.* at 447, 104 S.Ct. at 2511.

The "inevitable discovery" rule is not a harmless-error rule. It is a rule of admissibility which, in my view, has limited application in Texas in light of the express provisions of article 38.23 of the Code of Criminal Procedure as amended in 1987. *See Oliver v. State,* 711 S.W.2d 442, 445 (Tex.App.—Fort Worth 1986, no pet.); Tex. Code Crim.Proc.Ann. art 38.23 (Vernon Supp.1991).

Here, the Court found that the evidence was admissible, and we affirm that ruling. The majority, however, applies the inevitable discovery rule in its harmless-error analysis, and I cannot agree with that application.