Jacqueline McKer **CARDWELL**,
Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–92–00087–CR.

Court of Appeals of Texas,
El Paso.

Dec. 29, 1994.

David C. Guaderrama, El Paso County Public Defender, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for State.

Before KOEHLER, LARSEN and McCOLLUM, JJ.

## OPINION ON REMAND

LARSEN, Justice.

This is an appeal from a jury conviction for the offense of possession of cocaine under 28 grams. A warrantless search was conducted

of Jacqueline McKer Cardwell which yielded a folded food stamp containing one-tenth of a gram of cocaine. The jury assessed punishment at 7 years' imprisonment. We reverse.

On December 29, 1993, this Court issued an opinion reversing the conviction in the instant case and remanding for a new trial. On August 17, 1994, the Court of Criminal Appeals granted the State's petition for discretionary review. The State filed a petition which challenged our Court's failure to address its argument that the search in the instant case was proper because it was incident to a lawful arrest. In *Cardwell v. State*, 881 S.W.2d 712 (Tex.Crim.App.1994), the Court of Criminal Appeals granted the State's petition and vacated the judgment of this Court and remanded the cause with instructions to consider the propriety of the search as incident to a lawful arrest.

## FACTS

On March 20, 1991, two El Paso County Police officers were surveilling an area known for drug trafficking and other crimes, having received a tip that a large drug transaction would occur that day. They were watching two Hispanic men who had been in the area approximately twenty to twenty-five minutes. They saw a small brown Subaru with appellant and a woman companion in it pull up. One of the officers recognized appellant's friend as a known habitual drug user. The officers saw "some sort of transaction," between the women and the Hispanic men, although they saw no money change hands. They did see one of the men give appellant a small white piece of paper, which she put in her jacket pocket.

Abandoning their surveillance, the officers followed the women in their brown Subaru, which next went to a drive-through pharmacy. The officers believed that the women bought something there, but did not see what it was. They then followed the women to an alley, where they blocked them in. After the two women exited their car, the female officer patted down appellant Cardwell, searched her jacket, and found a small folded food stamp coupon which she opened. It held a white powdery substance, which proved upon later analysis to be one-tenth of a gram of cocaine. The officer quite candidly admitted that the paper did not feel like a gun or a knife, and her partner stated that he never felt threatened by the women or believed there was any need for a weapons search, as both women's hands were in sight at all times, and their car doors were open.

Although the officers did indeed find syringes in the car after the pat-down (apparently purchased at the drive-through pharmacy), there is no evidence that they saw any drug paraphernalia before the search took place.

In four points of error, appellant contends that the cocaine found in her jacket pocket should have been suppressed as the fruit of an illegal search. She argues first that the facts articulated by the officers did not warrant an investigative stop. Second, she urges that the "frisk" which yielded the cocaine was conducted without any showing that Cardwell and her companion were armed or posed any danger to the officers. Third and fourth, she argues that no reasonable person could believe that the folded food stamp wrapper was a weapon, and that the search exceeded the scope of a proper weapons frisk.

## STANDARD OF REVIEW

Our decision in this case is based on the testimony adduced at the hearing on appellant's motion to suppress evidence and the evidence adduced at the suppression hearing is viewed in the light most favorable to the trial court's ruling. *Perez v. State*, 818 S.W.2d 512, 514 (Tex.App.—Houston [1st Dist.] 1991, no pet.). The trial judge is the sole and exclusive trier of facts at a hearing on a motion to suppress. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Cannon v. State*, 691 S.W.2d 664 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Hawkins v. State*, 628 S.W.2d 71 (Tex.Crim.App.1982).

On appeal, a reviewing court does not engage in its own factual review but decides whether the trial judge's fact findings are supported by the record. *State v. Giles*, 867 S.W.2d 105, 107 (Tex.App.—El Paso 1993, pet. ref'd). If the record supports

the findings, this Court is not at liberty to disturb the trial court's findings and, on review, we address only the question of whether the trial court improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543; *Self v. State*, 709 S.W.2d 662, 664–65 (Tex. Crim.App.1986); *Johnson v. State*, 698 S.W.2d 154, 159 (Tex.Crim.App.1985), cert. denied, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). Furthermore, we must consider the totality of the circumstances in determining whether the trial court's finding are supported by the record, and the findings will not be disturbed absent a clear abuse of discretion. *Dancy v. State*, 728 S.W.2d 772, 777 (Tex.Crim.App.), cert. denied, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987).

■ If the trial judge's decision is correct on any theory of law applicable to the case, however, it will be sustained. *Romero*, 800 S.W.2d at 543; *Calloway v. State*, 743 S.W.2d 645, 652 (Tex.Crim.App.1988); *Spann v. State*, 448 S.W.2d 128 (Tex.Crim.App.1969); *Moreno v. State*, 170 Tex.Crim. 410, 341 S.W.2d 455 (1960). This principle holds true even though the trial judge gives the wrong reason for his decision, *Salas v. State*, 629 S.W.2d 796, 799 (Tex.App.—Houston [14th Dist.] 1981, no pet.), and is especially true with regard to the admission of evidence. *Romero*, 800 S.W.2d at 543; *Dugard v. State*, 688 S.W.2d 524, 530 (Tex.Crim.App.1985). In the instant case, the trial court judge did not specify under which theory he found the evidence admissible.

### INVESTIGATIVE DETENTION

■ It is well settled that a police officer may, in appropriate circumstances and in an appropriate manner, approach an individual for purposes of investigating possible criminal behavior even when there is no probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). During an investigative detention, or *Terry* stop, a police officer may briefly question a suspicious person respecting his identity, his reason for being in the area or location, and to make similar reasonable inquiries of a truly investigatory nature. *Amores v. State*, 816 S.W.2d 407, 412 (Tex. Crim.App.1991).

■ In order to justify such an intrusion, however, the officer must possess specific articulable facts which, in light of that officer's experience and personal knowledge, reasonably support the intrusion upon a citizen's freedom and privacy. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App. 1983). A *Terry* stop may be valid if founded upon a reasonable, articulable suspicion that the person detained is connected with criminal activity. *Amores*, 816 S.W.2d at 411, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Therefore, in deciding whether the *Terry* stop was proper here, we must determine if the police officers possessed specific articulable facts regarding their suspicion that appellant was connected with criminal activity to justify their detention of appellant. We find that they did.

The police officers knew that the area they were surveilling was a high drug trafficking area. One of the officers also knew the woman with appellant was a habitual drug user. The officers observed some type of transaction take place between appellant and the two Hispanic men who had been in the area for about twenty-five minutes. The officers then followed appellant and saw her buy something at a drive-through pharmacy. Although they did not see any money or drugs change hands, the officers believed the item exchanged in the transaction was a controlled substance. Viewing the evidence in the light most favorable to the trial court's ruling, the foregoing articulable facts support a finding that there was a valid investigatory detention founded on the suspicion appellant was connected with criminal activity.

Appellant cites *Smith v. State*, 759 S.W.2d 163, 165 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd), for the proposition that the officers did not have sufficient articulable facts to conduct an investigatory detention. In *Smith* two Houston police officers observed two men in a club parking lot exchange something. Id. at 164. One of the men was recognized as someone who had made transactions in the past. Id. Although the officers did not see what was exchanged, they believed that a narcotics transaction had just transpired. When appellant noticed the police officers he started walking towards the

club while sticking an item into his pocket. Considering the totality of the circumstances, the court of appeals determined that the "officers did not possess sufficient articulable facts to warrant appellant's detention." *Smith*, 759 S.W.2d at 165.

*Smith* does not control here because the officers in the instant case were privy to more facts than the officers in *Smith*. The additional information the officers in this case possessed, that the area where the transaction took place was a high drug traffic area, that the woman with appellant was a known habitual drug user, that the two stopped at the drug store, all support a finding of a valid detention based on the suspicion that criminal activity was afoot.

■■■■ Deciding that the stop was proper, we next examine whether the officer was justified in seizing and opening the folded food stamp in appellant's jacket pocket. We find she was not. During a stop and frisk, in the absence of probable cause, a police officer who reasonably fears for his or her safety, or that of others, may permissibly conduct a limited search of a suspect's outer clothing for weapons. *Davis v. State*, 829 S.W.2d 218, 220 (Tex.Crim.App.1992). Once the officer is satisfied that the suspect does not pose a danger, however, there is no valid reason to further invade that person's right to be free of police intrusion absent probable cause to arrest. Id. at 221; *Lippert v. State*, 664 S.W.2d 712, 721 (Tex.Crim.App.1984).

We believe that *Davis* controls the outcome here. In that case, officers performing a *Terry* stop and frisk found and opened a matchbox, there discovering cocaine. The Court of Criminal Appeals held that the frisk:

> [E]xceeded any justification that [the officer] might have had to search for weapons for his protection and therefore rendered the cocaine inadmissible under Article I, section 9 of the Texas Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. *Davis*, 829 S.W.2d at 221.

We find the facts justifying the search in this case even weaker than those in *Davis*: there, the officers could at least argue they feared a razor blade might be concealed in the matchbox.

Here, in contrast, neither officer felt any threat nor held any belief that appellant or her companion were armed. Neither did they believe that the folded food stamp was, nor contained, any weapon. They did not pretend otherwise. The officers were simply looking for contraband in appellant's jacket, and they clearly exceeded the scope of a permissible *Terry* weapons pat-down in doing so. For this reason, the trial court erred in refusing to suppress the fruits of this illegal search.

We overrule appellant's first point of error and sustain Points of Error Three and Four. Because of our disposition on those points, we need not reach Point of Error Two.

### SEARCH INCIDENT TO ARREST

The State asserts that the evidence presented at the suppression hearing supports the trial court's implied finding that the evidence seized from appellant was obtained as the result of a proper search incident to a lawful arrest. As stated above, the standard of review dictates that if the trial judge's decision to allow the evidence to be admitted at trial is correct on any theory of law, it will be sustained. We have already discussed the stop and frisk theory and determined the judge's decision was incorrect. We now analyze the validity of a search incident to arrest theory as a means to allow the evidence to be presented at trial. In doing so, we must determine whether the testimony at the suppression hearing supports the finding that there was a lawful arrest of appellant and a proper search pursuant to such arrest.

■■■■ Arrest may be by warrant or without warrant. Arrest without warrant in Texas is *per se* unreasonable unless (a) there is probable cause with respect to that individual, and (b) a statutory exception to the warrant requirement exists. *Adkins v. State*, 764 S.W.2d 782, 785 (Tex.Crim.App. 1988). Even if there is abundant probable cause, an arrest which does not fall within a statutory exception is unlawful. As there was no arrest warrant issued for appellant in this case, both these requirements must have been met to constitute a valid arrest.

The State contends that the facts give rise to a warrant requirement exception found in Article 14.01(b) of the Code of Criminal Procedure. That article states:

A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. TEX.CODE CRIM.PROC.ANN. art. 14.01(b) (Vernon 1977).

The test for determining whether probable cause exists for a warrantless arrest is stated as:

[W]hether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrested person] had committed or was committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 13 L.Ed.2d 142, 145, 85 S.Ct. 223, 226 (1964).

By the same token, however, the Court of Criminal Appeals has declared an "inarticulate hunch, suspicion or good faith of an arresting officer is insufficient to constitute probable cause for an arrest, search or temporary detention." *Fatemi v. State,* 558 S.W.2d 463, 466 (Tex.Crim.App.1977).

Here the officers testified that they did not actually see money or drugs exchanged and, thus, could not affirmatively state they saw an offense committed. The State argues that Article 14.01 arrests have been upheld when an individual's conduct, while not overtly criminal by itself, is *coupled* with an officer's prior knowledge so that the otherwise innocuous conduct reflects that an offense is *then* occurring. *Lunde v. State,* 736 S.W.2d 665, 667 (Tex.Crim.App.1987).

The State cites several cases where warrantless arrests were sanctioned under Article 14.01(b) even though the officers could not say they actually saw an offense committed. However, the facts of those cases are distinguishable from the instant case. In *Adkins,* the officers arrested appellant after conducting surveillance prompted by an informant's tip. *Adkins,* 764 S.W.2d at 784. The activity and the individuals they observed were described in "fine detail" by the informant. *Adkins,* 764 S.W.2d at 786. In

holding the arrest valid, the Court recognized that:

Standing alone, appellant's conduct at Pollock's residence might appear to be as consistent with innocent as with culpable behavior. However, the special information passed to the officers by the reliable and credible informant ... was substantiated by personal observation of appellant's specified conduct.... Id.

The Court specifically noted "that the circumstances combining the personal observations of the officer ... with the prior knowledge of the officers allowed a warrantless arrest under Art. 14.01(b), supra." The tip provided the prior knowledge the officers possessed which allowed for a warrantless arrest.

Unlike *Adkins,* the tip provided in the instant case could not be combined with the observations of the officers to form probable cause. The tip involved here indicated that a "large narcotic transaction being committed" in the area the officers were surveilling. However, the only transaction the officers witnessed appellant conduct was an exchange of a small piece of white paper. The conduct the officers saw here was as consistent with innocent as with culpable behavior. The officers' observations were unsupported by sufficient information which could give rise to probable cause to believe an offense was being committed. See *Troncosa v. State,* 670 S.W.2d 671, 676 (Tex.App.—San Antonio 1984, no pet.).

The State also cites language from *Lunde,* 736 S.W.2d at 667–68, where the Court of Criminal Appeals upheld an arrest and search stating:

Even though neither officer could testify as to overt observation of a substance or even packaging or money ... both Massey and Woods [the officers] were firm in their testimony that in their professional opinion, based on the particular circumstances and their knowledge of similar drug deals, that a transaction was taking place as they watched appellant. *Lunde,* 736 S.W.2d at 667–68. [Citation omitted].

Like the officers in *Lunde,* the officers in the present case also could not testify that they saw money or drugs change hands. Howev-

er, there the similarity between the two cases ends. In *Lunde,* as in *Adkins,* the officers received a detailed tip from an informant whose previous tips had proven correct and resulted in convictions. Id. at 666. The tip indicated that two men were at that very moment dealing heroin at a specifically identified location and that the informant himself had personally seen the appellant dealing drugs. Id. at 667. It was this knowledge that the officers possessed, coupled with their observations, which gave rise to probable cause to believe an offense under Article 14.01(b) was being committed. Id.

The additional cases cited by the State in support of a valid warrantless arrest in this case under Article 14.01(b) are equally unpersuasive; *Bender v. State,* 739 S.W.2d 409, 415 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd) (officers responding to tip appellant involved in commission of crime); *Gonzales v. State,* 648 S.W.2d 684, 687 (Tex.Crim. App.1983) (officers observed balloons under appellant's tongue and had received training that such was a common method of transporting and concealing heroin); *Hamilton v. State,* 590 S.W.2d 503, 505 (Tex.Crim.App. 1979) (officers plainly viewed an offense, namely the exchange of money for drugs, committed in their presence); *Hernandez v. State,* 548 S.W.2d 904, 905 (Tex.Crim.App. 1977) (officers were acting on informant's tips that appellants were engaging in criminal conduct). In *Bender,* the Court specifically stated that probable cause to arrest "was established by the detailed and comprehensive nature of the tip, corroborated by the independent observations of the arresting officer." *Bender,* 739 S.W.2d at 415.

None of the circumstances in the above cited cases were present in this case. By their own testimony, the officers here did not plainly and clearly view an offense take place and they did not receive information that appellant was making a drug deal.

The State quotes officer Calderon's testimony from the suppression hearing indicating that she "observed her [appellant] take a white substance ... from the driver" and that the officer "believed it to be a controlled substance." An inarticulate hunch, suspicion, or good faith of an arresting officer cannot give rise to probable cause. Because the contraband was wrapped inside a food stamp, officer Calderon could not have seen the cocaine. The facts known to her were insufficient to be merged with her observation of the exchange to result in probable cause to believe she viewed an offense take place. Her statement that she believed the item exchanged was a controlled substance amounted to nothing more than a hunch or suspicion.

### *CONCLUSION*

We find an absence of facts which would amount to probable cause for the arresting officers to believe an offense had been committed in their view. As such, the State's argument that the evidence was admissible pursuant to the theory of search incident to an arrest under Article 14.01(b) is meritless. We reverse the trial court's order denying appellant's motion to suppress and remand for further proceedings consistent with this opinion.