Royce BUSSEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 44472.

Court of Criminal Appeals of Texas.

Jan. 11, 1972.

Fairchild & Hunt, Center, for appellant.

Jim D. Vollers, State's Atty., and Robert Huttash, Asst. State's Atty., Austin, for the State.

OPINION

DAVIS, Commissioner.

This is an appeal from an arson conviction where the punishment was assessed by the jury at two years.

Appellant's sole contention is that the evidence is insufficient to support the conviction in that the record is devoid of any proof that the fire was of incendiary origin, and hence, the State has failed to establish the corpus deliciti of the offense of arson.

The record reflects that the complaining witness, Crump, testified that he had known appellant most of his life, and that he, Crump, had started going with appellant's estranged wife in the early part of 1966. Appellant became aware of this fact, and beginning about May or June of 1967, he and appellant had begun having some trouble over the relationship between Crump and appellant's wife. On one occasion, appellant came to the complaining witness's home, and finding his wife there, attacked her, and when the complaining witness tried "to get between them", appellant kicked the witness on the shin and shoved him down to the floor. The witness (Crump) further testified that, on at least four different occasions, appellant threatened to "burn me out." Crump's house was destroyed by fire on August 12, 1967, while he was in Longview. Crump agreed that the house could have burned accidentally. He testified that the house was wired for electricity, had a TV, an icebox, an iron and a regulation-type fuse box, in which he did not believe a fuse had been replaced in the seventeen years he had lived in the house.

Mike Bockwich, a 9-year old boy, who lived across the road from Crump, was fishing at a pond near his home at the time of the fire, and he testified that shortly before the fire, a man drove down the road toward the Crump house in a station wagon and apparently stopped; that he heard a car door slam and the station wagon came back into view from the direction of the Crump home; that he did not recognize the driver of the vehicle, but had seen the car going to the Crump house on several previous occasions. He further testified that at nearly 5 P.M., he saw smoke coming from the direction of the Crump home and ran to his own home to report the fire and found his mother calling the fire department. Young Bockwich testified that he did not see anyone set fire to the Crump house.

Witness Herndon testified appellant was walking around a car parked in the entrance to a lane that goes to the Crump house immediately before 5 P.M.; that there was insufficient room for him (Herndon) to drive past the parked car because of an open door, and he asked appellant to shut the door so that he might pass; that as he drove up to the place where the vehicle was parked, he saw appellant coming around the car and putting what looked like a quart bottle, or a fifth, in his pocket, but he did not know what was in the bottle. Herndon further testified that the Crump house was situated in an area of roads that formed a network, and that there was nothing unusual about seeing appellant in a car in that area.

Lillie Green, the grandmother of Mike Bockwich, was fishing with him at the time of the fire. She, too, saw a station wagon come down the hill, heading toward the Crump home and identified the vehicle as being one which had been pointed out to her as belonging to appellant. She could not recognize the driver, but she did hear the car stop, a door shut and about fifteen minutes later, about 5 P.M., she saw smoke coming from the direction of the Crump home. She did not see anyone get out of the car, nor anyone go to the Crump house. She did not see anyone set fire to the house.

Appellant testified that he had driven by the Crump home, about 3 P.M., on the day of the fire but denied that he set the fire and that he had been anywhere in the neighborhood at the time the house burned. Other

testimony, in his behalf, raised the issue of alibi.

■ To establish the corpus delicti, in arson cases, it is necessary to show (a) that the house was designedly set on fire, and (b) that the accused did it or was criminally connected therewith. Zepeda v. State, 139 Tex.Cr.R. 258, 139 S.W.2d 820.

■ Viewed from the standpoint most favorable to the State, the testimony summarized above does no more than establish motive and opportunity, and this is not sufficient to establish the corpus delecti in a prosecution for arson. Massey v. State, 154 Tex.Cr.R. 263, 226 S.W.2d 856.

In Zepeda v. State, supra, this court said that the fact that a building is destroyed by fire does not show that the crime of arson was committed by anyone, and there must be evidence that the fire was of incendiary origin. In the instant case, no witness testified to the cause of the fire, and indeed, no one even ventured an opinion as to the cause. The State made no attempt to negate the possibility that the fire resulted from defective electrical wiring, a defective water heater, spontaneous combustion, or any other one of the myriad of possible ways in which a house may burn without anyone being criminally responsible therefor.

In Hall v. State, 155 Tex.Cr.R. 235, 233 S.W.2d 582, this court held that the evidence was insufficient to prove that the fire, which destroyed the house, was of incendiary origin where the facts were very similar to those in the instant case. We quote from Hall:

" 'Appellant appeared to be in love with a woman named Alice Underwood, and while he was a married man, was attempting to get this lady to live with him. He was jealous of another man whom she subsequently married. * * *

" 'Appellant had been threatening to burn Mrs. Underwood's house, and perhaps to kill her. He was at her house and drunk and raising a disturbance the afternoon or evening before the fire. On this occasion she got two knives away from him, which he was threatening to use on her, and being frightened by him, she decided to take her children and spend the night with her daughter's fiance.

" 'That night, shortly before the fire, appellant was seen in the vicinity of the Underwood house. A very short space of time, less than half an hour, after he was seen in the vicinity of the Underwood house, it burst out in flames and was burned.' "

\* \* \* \* \* \*

"It appears from a study of the record that no one saw appellant set the house afire; neither did anyone testify that such house was set afire; but circumstances alone are relied upon. There seems a strong possibility that same could have caught afire from a heater or pilot light therein.

"While we have motive and the declaration of an intent, such being useful, still such is not conclusive of guilt. See Massey v. State, [154 Tex.Cr.R. 263] 226 S.W.2d 856; Duncan v. State, 109 Tex. Cr.R. 668, 7 S.W.2d 79; Zepeda v. State, 139 Tex.Cr.R. 258, 139 S.W.2d 820; Burris v. State, [154 Tex.Cr.R. 399] 227 S.W.2d 538."

In the instant case, we have motive, declaration of intent, appellant placed in the vicinity of the house shortly before the fire, and the possibility that the fire could have started from another origin. We also have the same elements missing. There is no testimony that anyone saw appellant set the house afire, and no testimony that the house was set afire.

For insufficient proof to sustain the conviction, the judgment is reversed and the cause remanded.

Opinion approved by the Court.