MEMORANDUM OPINION




No. 04-03-00121-CR



Kevin Dwain CALVIN,


Appellant



v.



The STATE of Texas,


Appellee



From the 228th Judicial District Court, Harris County, Texas


Trial Court No. 917989


Honorable Jon Hughes, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice


Delivered and Filed: November 24, 2004


AFFIRMED

 Kevin Dwain Calvin appeals his conviction for arson. He brings three issues on appeal. We
overrule all issues and affirm the judgment of the trial court.

BACKGROUND

 On the evening of November 13, 1999, an automobile belonging to Calvin was discovered
abandoned and on fire in a secluded area of Houston. The automobile contained computer and
electronic equipment, all belonging to Calvin, which had also been set on fire. Gasoline was used as
an accelerant to start the fire.

 During the early morning hours of that same day, Calvin reported a burglary of his apartment
in which several valuable items were stolen. He also reported that his automobile had been stolen.
Officers that investigated the case noticed suspicious circumstances and behavior on the part of
Calvin surrounding the alleged burglary. As part of these suspicious circumstances, Calvin had
reported to police on the day before, November 12, 1999, that he allegedly had been robbed while
washing another of his automobiles late at night at a car wash located in a bad part of town. In this
alleged robbery, Calvin claimed that, not only had his automobile been taken, but also that a
computer, valuable jewelry, $1,200 in cash, and the keys to his apartment and vehicles had been
taken. Therefore, in the alleged burglary of his apartment on the following day, Calvin explained that
there was no forced entry because the robbers from the night before had the keys to his apartment.


 Officer Clement, who investigated the scene and questioned Calvin on the day of the alleged
burglary, testified that it was not only highly unusual, but, in fact, unprecedented in her five years
with the Houston Police Department's Robbery Division, that robbers would return the next day to
burglarize a victim's dwelling. In addition, investigating officers noticed that Calvin's apartment was
atypical of a burglary/home invasion crime scene. For example, areas that normally would have been
searched remained untouched, and items that typically would have been taken were left behind.
Further, officers at the scene noticed that Calvin appeared nervous and irritable. 

 Some time following these incidents and the discovery of Calvin's burned automobile and
property, Calvin was observed with and treated for second-degree burns on his legs and arms and
first-degree burns on his face, locations that would be consistent with burns received by someone
errantly starting a gasoline flash fire. 

BATSON
CHALLENGE

 The State used eight peremptory challenges to strike African-Americans from the venirepanel.
Alleging that the State's strikes were racially motivated, Calvin brought a Batson challenge, which
the trial court overruled. On appeal, Calvin argues that the trial court erred in overruling his Batson
challenge with regard to Juror 19, Juror 34, and Juror 35. 

 Under the Equal Protection Clause of the Fourteenth Amendment to the United States
Constitution, a litigant may not exercise a peremptory challenge based on a juror's race. Batson v.
Kentucky, 476 U.S. 79, 89 (1986). Courts analyze all allegedly racially-motivated strikes according
to a three-step process. First, the objecting party must make a prima facie case of racial
discrimination. Id. Second, once a prima facie case is made, the striking party must tender race-neutral reasons for the strike. (1) Id. Third, if race-neutral reasons are tendered, the objecting party
must prove purposeful discrimination. Id. On appeal, we afford the trial court's determination great
deference; we will not overturn the trial court's ruling regarding a Batson challenge unless it is shown
to be clearly erroneous. Rhoades v. State, 934 S.W.2d 113, 123 (Tex. Crim. App. 1996). 

A. Juror 19

 First, Calvin challenges the State's peremptory strike of Juror 19. Here, the State explained
that it based its peremptory strike of Juror 19 on her failure to fully complete her juror information
card. (2) The trial judge accepted the State's explanation as race-neutral. We agree. The State's
explanation does not on its face indicate an inherently discriminatory intent. See Satterwhite v. State,
858 S.W.2d 412, 423 (Tex. Crim. App. 1993) (accepting potential juror's failure to fully complete
juror information card as race-neutral explanation for peremptory strike). Therefore, once the State
gave this racially-neutral explanation for the peremptory challenge, the burden shifted to Calvin to
persuade the court that the strikes were in fact racially motivated. Id. at 424. Rather
than question
the credibility of the State's explanation, however, Calvin stated, "May the record also reflect she has
four years of college, Judge." Calvin offers no evidence of discriminatory intent on the part of the
State, nor do we find any reason why the trial court could not accept the State's racially neutral
explanations at face value. Accordingly, we overrule this issue with regard to Juror 19. 

B. Juror 34

 Next, Calvin challenges the State's peremptory strike
 of Juror 34. The State explained that
it based its peremptory strike of Juror 34 on its belief that Juror 34 had a friend or family member
who was in the penitentiary. The trial court accepted the State's explanation as race-neutral. Again,
we agree. The State's explanation does not on its face indicate an inherently discriminatory intent.
See Sims v. State, 768 S.W.2d 863, 865 (Tex. App.--Texarkana 1989), pet. dism'd,
792 S.W.2d 81
(Tex. Crim. App. 1990) (accepting State's reasoning that prospective juror has a family member who
has had trouble with the law as a race-neutral explanation for a peremptory challenge). Therefore,
again, following the trial court's acceptance of this explanation, the burden shifted to Calvin to show
that the strike was, in fact, racially-motivated. After the prosecutor proffered his reasons, though,
Calvin did not cross-examine, nor did he offer any evidence showing an impermissible motive for the
peremptory challenges in question. Instead, for the first time on appeal, Calvin asserts that the record
did not establish that Juror 34 had friends or family in the penitentiary. It is not enough merely to
show that a proffered explanation turns out to be incorrect. Johnson v. State, 68 S.W.3d 644, 649
(Tex. Crim. App. 2002). Accordingly, we overrule this issue with regard to Juror 34.

C. Juror 35

 Finally, Calvin challenges the State's peremptory strike of Juror 35. In striking Juror 35, the
State supplied the reasoning that Juror 35 had admitted in voir dire to having been discriminated
against in the workplace. The trial court accepted the State's explanation as race-neutral. We agree.
In our analysis of the striking party's explanation, we do not demand that the explanation be
persuasive or even plausible, only that it does not on its face indicate an inherently discriminatory
intent. Purkett v. Elem, 514 U.S. 765, 768 (1995). Therefore, following the trial court's acceptance
of this explanation, the burden shifted to Calvin to show that the strike was, in fact, racially
motivated. Once again, rather than question the credibility of the State's explanation, Calvin only
asserted that this explanation, even if true, would not affect Juror 35's ability to be fair. Because
Calvin offers no evidence of discriminatory intent on the part of the State, we overrule this issue with
regard to Juror 35.

 Because the State offered race-neutral reasons for exercising its peremptory strikes and Calvin
did not meet his burden of showing intentional discrimination, we hold that the trial court's overruling
of Calvin's Batson challenge was not clearly erroneous. Accordingly, we overrule this issue on
appeal. 
L
EGAL AND FACTUAL
SUFFICIENCY
 In two issues on appeal, Calvin argues that the evidence is legally and factually insufficient
to support his conviction for arson. We disagree. 

A. Standard of Review

 When reviewing the legal sufficiency of the evidence, we do not weigh the evidence tending
to establish innocence, nor do we assess the credibility of witnesses. Jackson v. Virginia, 443 U.S.
307, 319 (1979); Ex parte Elizondo, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996). We view the
evidence in the light most favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at
319; Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). If we determine that the
evidence is legally insufficient, we must render a judgment of acquittal. Clewis v. State, 922 S.W.2d
126, 133 (Tex. Crim. App. 1996).

 In reviewing the factual sufficiency of the evidence, rather than viewing the evidence in the
light most favorable to the prosecution, our review is a neutral one of the evidence. Zuniga v. State,
No. 539-02, 2004 WL 840786, at *4 (Tex. Crim. App. Apr. 21, 2004). We determine if a finding
is so against the great weight and preponderance of the evidence that it is manifestly unjust, shocks
the conscience, or clearly demonstrates bias. Id. at *7. There is only one question to be answered
in a factual sufficiency review: considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt? If, after a neutral review of all the evidence, we
determine that proof of guilt is so obviously weak as to undermine the confidence in the jury's
verdict, we must vacate the conviction and remand the cause for a new trial. Johnson v. State, 23
S.W.3d 1, 9 (Tex. Crim. App. 2000). 

 Further, we determine sufficiency of the evidence by the elements of the crime as defined by
the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).
The correct charge "would be one that accurately sets out the law, is authorized by the indictment,
does not unnecessarily restrict the State's theories of liability, and adequately describes the particular
offense for which the defendant was tried." Id.

B. Analysis

 The penal code provides that a person commits the offense of arson if he starts a fire with
intent to destroy or damage any vehicle knowing that it is within the limits of an incorporated city or
town. See TEX. PEN. CODE ANN. § 28.02(a)(2)(A) (Vernon 2003). According to Calvin, the
evidence presented by the State merely demonstrated that (1) Calvin filed a complaint with the police
that his car and belongings had been stolen; (2) Calvin's car and belongings were found burned; (3)
no one saw who started the car on fire; (4) no one identified Calvin as the one who started the fire;
(5) Calvin had burns on his legs and arms from an unknown source; and (6) the physician that treated
Calvin did not know what caused the burns or how old the burns were before he treated Calvin.
Thus, Calvin contends that the evidence remained legally and factually insufficient to link him to the
crime of arson for which he was convicted. We disagree.
 Circumstantial evidence, by itself, may be
enough to support the jury's verdict. See Smith v. State, 965 S.W.2d 509, 515 (Tex. Crim. App.
1998). The record establishes that the circumstantial evidence could have led a rational jury to
determine beyond a reasonable doubt that Calvin committed the act of arson as a means of obtaining
an insurance settlement. 

 Here, the record establishes that, at or around the time
 of the alleged burglary, Calvin received
severe burns to his body and face. In linking the cause of Calvin's injuries to the fire that burned his
automobile, the State offered expert testimony tending to prove that Calvin's burns were consistent
with injuries that would be caused by a flash fire involving gasoline. The State also presented
evidence of Calvin's inconsistency in proffering explanations for the burns. Calvin first told Ms.
Harding that he was burned in a motorcycle accident. Two days later, Calvin told his physician, Dr.
Mazique, that he was burned by an automobile radiator. A few weeks after the incident, Calvin told
Ms. Harding that the burn resulted from an abduction in which he was tied up, placed in the trunk of
a car, taken out to a field, and set on fire. We hold that this evidence, coupled with the fact that
Calvin subsequently submitted large insurance claims on the allegedly stolen property, is legally
sufficient for a jury to find that Calvin committed the act of arson. 

 With regard to factual sufficiency, Calvin argues that the
 evidence is insufficient to show that
the property was set on fire by a person, as is required in an arson case. See Bussey v. State, 474
S.W.2d 708, 710 (Tex. Crim. App. 1972). Calvin's automobile was found abandoned on a secluded
road in Houston, and was later discovered set on fire from an unknown source. The record does
establish, though, that this unknown source of fire was not unintentional or benign, due, for example,
to defective electrical wiring, spontaneous combustion, or any of a myriad of other possibilities. See
id. Rather, arson investigators at the scene determined that the automobile had been intentionally set
on fire from the inside using gasoline as an accelerant. Furthermore, the record establishes that, at
or around the time of the alleged robbery, Calvin received severe burns to his body and face,
consistent with injuries that would be caused by a flash fire involving gasoline. Considering all of the
evidence in a neutral light, we hold that a jury could be rationally justified in finding that Calvin
committed the crime of arson. Accordingly, we overrule both issues on appeal.

 CONCLUSION 
 

 We overrule all issues on appeal and affirm the
 judgment of the trial court. 

 


 Karen Angelini, Justice

Do Not Publish 

 

1. In examining the striking party's stated reason for striking a potential juror, the trial court must look at the
facial validity of the State's explanation, and "[u]nless a discriminatory intent is inherent in the prosecutor's
explanation, the reason offered will be deemed race neutral." Purkett v. Elem, 514 U.S. 765, 768 (1995) (attorney's
explanation that he struck African-American juror because juror had long hair, mustache, and goatee was considered
race-neutral).

2. Specifically, Juror 19 had failed to answer questions requesting information regarding her sex, race, age,
and occupation.