

NUMBER 13-10-00496-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ELLIOTT BYRON CLARK,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                 **Appellee.**

### On appeal from the 24th District Court
### of DeWitt County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Vela and Perkes**
**Memorandum Opinion by Justice Benavides**

Appellant, Elliott Byron Clark, was indicted on the charge of arson with punishment enhancements alleging that he was a habitual felony offender. *See* TEX. PENAL CODE ANN. § 28.02(a) (West 2003). He was convicted by jury, and, finding two of three enhancement paragraphs "true," the trial court sentenced Clark to life

imprisonment in the Texas Department of Criminal Justice—Institutional Division. By one issue, Clark contends that the evidence was insufficient to sustain his conviction for arson. We affirm.

## I. BACKGROUND

In February of 2009, Clark was living in a travel trailer owned by John Naranjo, Sr., for which an agreement had been made that Clark would work for Naranjo in exchange for free residence. Naranjo testified that on February 20th, Clark called him for a ride from Yorktown back to the trailer. According to Naranjo, he agreed to pick up Clark, but when he arrived at the specified location, Clark did not get into the truck, so Naranjo left. On his way home, Naranjo received a phone call from Clark in which Clark "cussed [Naranjo] out" and called him a liar. Naranjo testified that Clark was angry that Naranjo had left without him. Naranjo then testified that Clark threatened him:

Q:     [Counsel for the State] And did you see Elliot Clark again that evening or afternoon or night?

A:     [Naranjo] Later on that night [Clark] called me again and he was mad at me or whatever. But I told him, well, how come you're mad at me, I mean, whatever? So then I told him, well, where are you at? He said he was outside of my house and he could go drag me out of my house.

Q:     Okay.

A:     So . . . .

Q:     He told you that he was going to drag you out of that house?

A:     Yes, sir, he did.

Q:     So what did you do?

A:     So I came out. I said nobody's going to drag me out of my house, you need to go. The trailer over there is the place that I gave for you to stay, you can stay there till tomorrow and then you can

2

decide where you're going to go from there, because I don't want you on the place if he's going to be like that.

A:     Did he threaten you after that?

Q:     Well, he kind of—when I run him off from the house he said, well, I'll get even with you or whatever, but he kept on going and went that-a-way.   So I figured, well, that he's going to stay over there until tomorrow and then he'll be—you know, he'll find a place or something to stay.

On cross-examination, Naranjo testified that he told Clark he had a gun that he would retrieve if Clark did not leave his house.   When Clark left Naranjo's house, he walked back towards the trailer.   Within twenty or thirty minutes, Naranjo received a call that his trailer was on fire.   When Naranjo arrived at the trailer, the fire department was already engaged in extinguishing the fire.   Naranjo testified that after his argument with Clark, he did not see Clark again, nor did Clark return to trailer.

Robert "Red" Wooten lived in another building owned by Naranjo on the same property as Naranjo's house and the trailer.   Wooten testified that Clark was very angry after his argument with Naranjo and came to Wooten asking for a ride off of the property. Wooten agreed, at which time Clark returned to the trailer "to get his stuff."   Clark returned to Wooten's house within a few minutes and Wooten testified that Clark "was in a hurry" and by the time Wooten came outside, Clark already had his bags in Wooten's truck and was waiting inside the cab of the truck.   Wooten drove Clark to a local business located about a three-minute drive from the property, and when Wooten returned home, he noticed that the trailer was engulfed in flames.

Susan Matejek testified that Clark called her asking for a ride from a cemetery located near the business at which Wooten dropped Clark off.   Matejek picked up Clark

3

and dropped him off at the residence of Kelly Bluntzer in Cuero. Matejek testified that both Clark and Bluntzer were "in a hurry for [her] to pick him up." Matejek testified further that either one or two days later, Clark asked her for a ride to the bus station in Victoria because he was "going home to Arkansas." Matejek agreed and dropped him off at the bus station.

Shannon Huebner, a friend of both Clark and Bluntzer, testified that Clark had lived in her house for a few months before moving to the Naranjo property. The following exchange occurred on direct examination:

Q: [Counsel for the State] Okay. Shannon, in the course of the time that this defendant, Elliot Clark, was there under the same roof with you, did he ever make a reference to what he did if people made him angry?

A: [Huebner] He said he liked to catch things on fire or blow them up.

Q: Did he say—did he say he liked to catch things on fire and blow them up in response to people making him angry or was this just something he liked to do in general, or do you remember?

A: I think it was kind of [] both and a mixture. I think he liked to do it just in general, but it usually happened whenever people made him angry.

. . . .

Q: Without going into the details, can you tell the jury whether or not he would—did he ever discuss the best ways to light places on fire and things like that?

A: Yes, sir.

Kelly Bluntzer, an ex-girlfriend of Clark's, testified that Clark told her that he and Naranjo "had gotten into it and that [Clark] had burned down one of [Naranjo's] houses, but that was because [Naranjo] pulled a gun on him first." She also testified that Clark had two tattoos: one was the word "pyro" covered in flames, and the other was of a Bic

4

brand disposable lighter.    Bluntzer also testified that she was on probation at the time of her testimony for "[h]indering the apprehension and prosecution of a felon."

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

Our sufficiency review must be under "a rigorous and proper application" of the *Jackson* standard of review.    *See Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010).    Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."    *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 902 n.19.    "[T]he fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."    *Jackson*, 443 U.S. at 319 (emphasis in original); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases, is the exclusive judge of facts proved, and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge.    *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).    Under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that Clark:    (1) started a fire or caused an explosion (2) with intent to destroy or damage (3) a building, habitation, or vehicle (4) knowing that it was located on property belonging to another.    *See* TEX. PENAL CODE ANN. § 28.02(a).

5

A defendant's intent may be inferred from his words, acts, and conduct. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Intent and knowledge are fact questions for the jury, and are almost always proven through evidence of the circumstances surrounding the crime. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984).

### III. ANALYSIS

By his sole issue, Clark contends that the evidence was insufficient because the State "failed to establish the corpus delicti of the crime," there was no evidence that the fire was "designedly set," and the State failed to "disprove that the fire could have ignited accidentally." We construe this argument to additionally challenge the sufficiency of the evidence under the first two required elements of arson as outlined above—requiring the State to prove that Clark started the fire, and that he did so with the intent to destroy or damage Naranjo's property.

In this case, the jury heard the following evidence: (1) Clark had previously told others about his propensity to burn things when he was mad at someone; (2) on the day in question, Clark had been involved in an argument with Naranjo; (3) Clark returned to the trailer just before the fire began to collect his things; (4) Clark was in a hurry to leave Naranjo's property just at the time the fire would have been started; (5) Clark was in a hurry to get far away from the area—first to Cuero, then to the bus station in order to leave the state; and (6) Clark admitted to a friend that he started the fire. Though the evidence was circumstantial, the jury was permitted to make reasonable inferences based on Clark's conduct and the circumstances surrounding the fire, including inferences regarding his intent to destroy Naranjo's property. *See Patrick*, 906 S.W.2d

6

at 487; *Robles*, 664 S.W.2d at 94. Accordingly, when viewed in the light most favorable to the prosecution, this evidence was sufficient for the jury to find Clark guilty of the indicted offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319 (1979); *Brooks*, 323 S.W.3d at 902 n.19.

Citing *Bussey v. State*, 474 S.W.2d 708 (Tex. Crim. App. 1972), and *Adrian v. State*, 587 S.W.2d 733 (Tex. Crim. App. 1979), Clark contends that a failure to show, by independent evidence, the incendiary nature of the fire is grounds for an acquittal on appeal. In *Bussey*, which had some similar facts to this case, the court of criminal appeals held that the evidence "[did] no more than establish motive and opportunity" and was therefore insufficient. *Bussey*, 474 S.W.2d at 710–11. Additionally, in *Adrian*, the court held that an extra-judicial confession could not be the sole grounds for establishing the corpus delicti of the crime. However, when put together, an extra-judicial admission of the crime and evidence showing motive and opportunity to start a fire can be sufficient to establish the fact that a crime was indeed committed. *Hough v. State*, 929 S.W.2d 484, 487–88 (Tex. App.—Texarkana 1996, pet. ref'd) (noting that the circumstantial evidence in that case was not sufficient to independently prove the corpus delicti apart from the confession, but that "it renders the corpus delicti more probable than it would be without the evidence," and holding the evidence to be sufficient to sustain the finding that an act of arson had been committed).

Here, there was direct evidence putting Clark in the building at the time the fire must have begun and, most importantly, direct evidence of his hurried flight from the scene. This evidence, along with his confession and the other circumstantial evidence listed above, is sufficient to support the finding of the corpus delicti. *See Wooldridge v.*

*State*, 653 S.W.2d 811, 816 (Tex. Crim. App. 1983) ("It is well settled that if there is some evidence corroborative of a confession, the confession may be used to establish the 'corpus delecti.'"); *Wheeler v. State*, 35 S.W.3d 126, 134 (Tex. App.—Texarkana 2000, pet. ref'd) ("The evidence establishing the corpus delicti need not be direct, but may be circumstantial.  While such evidence must relate to the corpus delicti, it need not be sufficient in itself to prove the offense; it need only render the corpus delicti more probable than it would be without the evidence."); *see also Gutierrez v. State,* No. 13-02-00534-CR, 2004 Tex. App. LEXIS 7036, at **4–5 (Tex. App.—Corpus Christi Aug. 5, 2004, no pet.) (citing *Fisher v. State*, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993)) ("[C]orroboration requires only some proof tending to show that the crime was committed.  The State need not prove corpus delicti beyond a reasonable doubt, or even by preponderance of the evidence; it need only provide some evidence other than the confession that someone committed the crime.").

Finally, in so far as Clark contends that the evidence was insufficient to show the manner and means by which Clark allegedly started the fire, we note that the manner and means is not an essential element of the crime as defined by a hypothetically correct jury charge, and is therefore irrelevant to our sufficiency review.   *See Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999); *Malik*, 953 S.W.2d at 240; *Rose v. State*, 76 S.W.3d 573, 574 (Tex. App.—Corpus Christi 2002, no pet.); *Richards v. State*, 54 S.W.3d 348, 350 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

Accordingly, the evidence was sufficient for a jury to find all of the requisite elements of arson beyond a reasonable doubt.   We overrule Clark's issue.

## IV. Conclusion

Having overruled Clark's sole issue, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
25th day of August, 2011.